Patrick H. Dwyer, SBN 137743
P.O. Box 1705, Penn Valley, CA 95946
Tel: (530) 432-5407; Fax: (530) 432-9122
Email: pdwyer@pdwyerlaw.com
Attorney for Plaintiffs Estate of Gabriel Strickland,
N.S., and Shawna Alexander

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of Gabriel Strickland, N.S., and Shawna Alexander,<br>     Plaintiffs,<br><br>vs.<br><br>Nevada County, California, et al.,<br>     Defendants. | CASE NO.: 2:21-CV-000175-MCE-AC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT NEVADA COUNTY'S MOTION TO DISMISS**<br><br>Date: March 25, 2021 (vacated) |

Defendant Nevada County has filed a motion (ECF 14) under FRCP 12(b)(6) to dismiss Plaintiff's *Monell* claims and certain state law claims ("Motion"). Plaintiffs submit this Opposition to Defendant's Motion.

Table of Contents

I.      Introduction ............................................. 1

II.     Applicable Law

        A.      Motions to Dismiss .................................. 2

        B.      *Monell* Claims ......................................... 3

III.    The 4th and 12th Causes of Action are Properly Pleaded under *Monell*

        A.      The Complaint Alleges a Single Instance that Proves
                the Deliberate Indifference of Nevada County ....................... 5

        B.      Plaintiffs Have Also Pleaded Multiple Instances
                in Support of the 4TH and 12th Causes of Action ...................... 9

        C.      Request for Judicial Notice of Recent Excessive Force by NCSO
                Deputies Resulting in Death to Mentally Disturbed Person        12

IV.     The 7th and 15th Causes of Action are Properly Pleaded under *Monell*

        A.      The Complaint Alleges a Single Instance that Proves
                the Deliberate Indifference of Nevada County ....................... 13

        B.      Plaintiff Has Pleaded Multiple Instances to
                Support the 7TH and 15th Causes of Action ............................ 16

V.      State Law Claims

        A.      The Twentieth Cause of Action ................................. 17

        B.      The Twenty First Through Twenty Fourth Causes of Action      17

VI.     Defendant's Failure to Answer or Otherwise
        Plead to the 17th, 18th or 19th Causes of Action ................... 19

IV.     Conclusion .............................................. 20

# Table of Authorities

Page

**United States Supreme Court**

*Connick v. Thompson*, 563 U.S. 51, 63-64 (2011) ................................. 5

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................... 2, 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......................... 2, 16

*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997) ........... 3

*Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397 (1997) ............................................ 4

*City of Canton v. Harris*, 489 U.S. 378 (1989) ...................................... 2n2, 4-5, 20

*City of Oklahoma v. Tuttle*, 471 U.S. 808 (1985) .................................. 4

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) 2n1,

**United States Courts of Appeal**

*AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631 (9th Cir. 2012) . 3, 16

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001) ..................... 3

**United States District Courts**

*Maric v. Alvarado*, 2020WL949938 (E.D. Cal. 2020) at p. 6 .............. 18

*Varo v. Los Angeles County District Attorney's Office,* 473 F. Supp. 3d 1066 (C.D. Cal. 2019) ....................................... 3

*Coleman v. Newsom*, 424 F. Supp 3d (E.D. Cal. 2019) ........................ 15n9

*Velasquez v. County of San Bernadino*, 2018WL6061204 (C.D. Cal. 2018), at p. 2 ................................................. 18

*Coleman v. Wilson*, 912 F Supp (E.D. Cal 1995) ................................... 15n9

**United States Statutes**

42 U.S.C. § 1983 ........................................................................... 3, 4n3

**Federal Rules of Civil Procedure**

Federal Rule of Civil Procedure 4 ...................................................... 19n10

Federal Rule of Civil Procedure 12(b)(6) ................................... 2, 5, 19n10

## I.   **Introduction**

The basic facts of this case are not in dispute.  On New Year's Day 2020, Gabriel Strickland was walking through a quiet neighborhood in Grass Valley, California with an Airsoft plastic BB gun that was clearly marked with the orange tip as required by California law.  The legislature passed this law so that law enforcement would not confuse toy guns for real guns in such circumstances.

Gabriel Strickland did not brandish the toy weapon and did not assault anyone with it.  The officers and deputies that formulated the "Plan" (Complaint ¶ 34) knew Gabriel and that he suffered with mental health issues.  Even though there was no urgency, the Plan failed to include well-known de-escalation techniques and/or to employ a mental health professional or negotiator.  The Plan's *only* tactic was to surround Gabriel with an overwhelming number of officers armed with high-powered tactical weapons.  The officers commenced their Plan by jumping from their cars and shouting obscene demands to drop the gun.  When Gabriel calmly explained that it was a toy gun (pointing to the marked tip), the officers proceeded with a full-scale tactical assault that ended with three bullets to Gabriel's chest.

These facts could not paint a more clear picture of law enforcement officers that had no idea how to handle such a simple situation.  It is clear from the NCSO video that they had been highly trained in using lethal weapons and providing protective cover for each other.  It is tragically obvious that they either had no training in de-escalation and negotiation or they inexplicably ignored that training.

The facts also demonstrate the complete failure of their supervisors to modify the Plan, monitor the situation, or enforce policies on the use of lethal force.

As shown below, the Supreme Court has made it very clear that a *single* instance of the use of lethal force such as in this case, will support a *Monell*[1] claim. When the failure to train, supervise, and/or enforce constitutional policies on using lethal force is "so obvious,"[2] *Monell's* "deliberate indifference" pleading requirement is satisfied.

II. **Applicable Law**

   A. **Motions to Dismiss**

   In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*"), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*") . To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is

---

[1]     *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)("*Monell*").

[2]     This term is quoted from the Supreme Court's decision in the City of Canton *v. Harris*, 489 U.S. 378, 390 (1989).  See Conclusion, below, for full quote.

2

liable for the misconduct alleged" (Emphasis added).  *Iqbal* at 678.

To state a valid 42 U.S.C §1983 claim, Plaintiffs must plausibly allege that a person acting under color of state law deprived them of a federal constitutional or statutory right. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 180 (1997).

Although the Ninth Circuit recognized that the *Iqbal* and *Twombly* decisions "heightened the traditionally lax pleading requirements for Monell claims, the standard is no stricter for Monell claims than for other allegations." *Varo v. Los Angeles County District Attorney's Office*, 473 F. Supp. 3d 1066, 1076 (C.D. Cal. 2019)("*Varo*"), citing to *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

Most importantly, whether a "local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Varo at* 1076, citing to *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001).

B.  *Monell* Claims

To state a claim against a municipality under §1983 pursuant to the holding in *Monell*, a plaintiff may not allege mere *respondeat superior* liability, but instead must allege facts that, if proven, will demonstrate the municipality's acts or omission as the cause of the constitutional harm as distinguished from the acts or omissions of a municipal employee.  There are three ways a plaintiff may successfully plead a *Monell* claim.

First, the plaintiff can allege a single incident of harm that, if proved to have

3

occurred, will also prove the existence of the municipality's unconstitutional policy.[3]

Second, the plaintiff may allege two or more instances in which the acts or omissions of the municipality's employees prove that the municipality has failed to either have or enforce a constitutional policy or procedure, or failed to properly train or supervise its employees in a constitutional policy or procedure, and that such failure(s) caused the violation of plaintiff's constitutional rights.   See e.g., *City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985).

Third, the Supreme Court in *City of Canton v. Harris*, 489 U.S. at 390, recognized that there can be situations in which, even though there may not be an express unconstitutional policy such as in the first manner of pleading discussed above, the subject matter of the policy area is "so obvious" a matter of constitutional concern for a municipality that the failure of a municipality to address it *can be deemed to constitute deliberate indifference* to the rights of persons with whom officers come into contact and a plaintiff need only allege a *single instance* to state a valid legal claim.   Indeed, the Court used a failure to train example to make this very point:

> But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event,

---

[3]      For example, a plaintiff can allege that he went to vote, but was told by the municipality that he had to pay a city poll tax to vote.  If Plaintiff can prove that he had to pay the tax in order to vote, then he has proven the municipality's unconstitutional policy and the right to recover under 42 U.S.C. §1983.

the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury. *City of Canton* at 390.

Then in footnote 10, the Court presented the specific example of a municipality giving guns to its law enforcement officers, but failing to train them in the constitutional use of deadly force. This exception to the typical pleading of multiple instances has been noted in subsequent Supreme Court decisions on *Monell* cases. See *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011); *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 409 (1997).

As shown below, Plaintiffs have alleged facts sufficient to withstand Defendants FRCP 12(b)(6) motion under both the second and third described forms of *Monell* pleading.

III.   **The 4ᵗʰ and 12ᵗʰ Causes of Action are Properly Pleaded under** *Monell*

A.   **The Complaint Alleges a Single Instance that Proves the Deliberate Indifference of Nevada County**

Mental illness is not new and law enforcement has always had to know how to act towards persons with mental disability when making detentions and arrests. The above-cited Supreme Court decisions long ago put municipalities *on notice* that they would be liable under *Monell* if they did not adopt appropriate policies for the constitutional use of force and then train their law enforcement officers accordingly. This obviously included the adoption of, and then training in, specific policies and field practices for the mentally disabled. Thus, Nevada County cannot credibly argue that it has not been on notice for decades that it would be held liable under

5

*Monell* in an action such as alleged in this lawsuit.

Nevada County partially recognized its obvious constitutional obligation in its NCSO policy manuals.  Complaint ¶ 70.  However, Plaintiffs have alleged that these policies failed to include the specific policies and practices necessary to safely detain or arrest persons with mental illness; in particular, when and how to use lethal force in such situations.   More importantly, Plaintiffs allege that Nevada County never undertook any specific or adequate training for its NCSO deputies, never supervised its NCSO officers in this respect, and did not even enforce what limited policies it had adopted.  Complaint ¶ 70-71.  These failures in the face of its obvious constitutional obligations *unequivocally demonstrate Nevada County's deliberate indifference* to the possible harm at the hands of police officers.

The complaint alleges in considerable detail the events of the days preceding the shooting of Gabriel Strickland.  Complaint ¶¶ 24-31.  In particular, it makes it very clear that Gabriel Strickland suffered from serious mental illness and that this had been known to the Nevada County Sheriff Office for years.  It further alleges that Gabriel was released from custody shortly before his death without any mental health evaluation or treatment and that he was in a state where he was simply unable to support himself and unable to understand and reasonably respond to the commands of law enforcement. Complaint ¶¶ 28-31.

 The Nevada County NCSO deputies and the GVPD officers who responded to the dispatch call knew who Gabriel Strickland was, that he had a serious mental illness, and that he was not likely to respond to their commands as a normal person

6

would.  Nonetheless, they neither called for any mental health professional to come to the scene nor did they even confer with one about how to approach Gabriel Strickland.   Complaint ¶¶ 27-31, 32-35.

The allegations make clear that Gabriel Strickland was doing nothing wrong – he was walking in a very quiet neighborhood with a clearly marked (orange-tipped) airsoft rifle as allowed by law.  Gabriel Strickland never brandished the toy gun, never assaulted anyone or even spoke with anyone, never trespassed onto private property, and did not breach the peace.  Complaint ¶¶ 25-26, 36-37.

The Nevada County deputies and the Grass Valley officers obviously knew that there was no urgency to the situation because they met, conferred, and formulated the Plan for about 15 minutes prior to confronting Gabriel.  Complaint ¶¶ 27-31, 32-34.

The manner of how the incident unfolded was devoid of any action other than that of military-style tactical assault even though there was no urgency to the situation.  Gabriel Strickland could not escape and he was not doing anything other than standing on a quiet street with no one around.  The NCSO deputies drove up to where Gabriel Strickland was standing near the street corner, jumped out of the police cruiser and immediately began yelling "Drop the gun!", "Drop the fucking gun!" Gabriel told the officers that is just a BB gun.  The officers yelled that they did not know whether that was true, and Gabriel told them to look at the orange tip.  NCSO Deputy Tripp then said, "you could have painted that ...".  Gabriel responded "I'm not doing anything wrong" and stood with the toy gun pointed to the

7

ground and did not brandish the weapon or threaten anyone.   Complaint ¶¶ 39-48.

The video of the incident shows that Gabriel was not in a normal state of mind and that the officers were just frightening and agitating him.  The NCSO deputies should have been trying to *de-escalate* the situation, but in fact, the officers continue to do *exactly the opposite for about nine minutes*.   The defendant officers failed to call for any professional mental health or professional negotiation assistance, but instead, persisted in the tactical use of force.  It is obvious from the video that the NCSO officers had no idea what they were doing and had never been trained for how to detain or arrest a person with known mental health issues or how to de-escalate the incident so that no one was hurt.  Complaint ¶¶ 49-51.

Instead, the deputies and officers followed the only training that they had received: the full-on use of force with tactical weapons as if this situation was analogous to taking out a terrorist in Iraq. The result was painfully predictable – three fatal shots at close range into Gabriel Strickland's chest.  Complaint ¶¶ 52-63.

The Supreme Court's recognition that a single occurrence could prove a municipality's *deliberate indifference* to an obvious constitutional deficiency in its policies and procedures is frighteningly borne out by the events alleged in this case. It was "so obvious" in this situation that a <u>non-confrontational, de-escalation, approach</u> was required.  And it is "so obvious" from Nevada County's own, self-serving video that Gabriel Strickland was mentally incapable of responding to the <u>threatening commands and overwhelming tactical lethal force</u> deployed against him.  It is clear that the NCSO deputies and GVPD officers who responded to the

scene acted as they had been trained: with immediate use of military, tactical style force. No supervisor intervened to stop the tragedy and the Plan was executed against Gabriel. Accordingly, the Court should find that Plaintiffs have properly pleaded a *Monell* claim against Nevada County for excessive use of force in the Fourth and Twelfth Causes of Action.

B. **Plaintiffs Have Also Pleaded Multiple Instances in Support of the 4TH and 12th Causes of Action**

Not only do Plaintiffs meet the single instance pleading standard, they also have pleaded additional instances in which NCSO deputies used overwhelming force when none was necessary and caused serious bodily harm to an arrestee. See Complaint ¶ 74-76. Indeed, Defendant Nevada County's FRCP 12(b)(6) motion is based entirely upon the falsely-premised contention that the second and third instances of excessive force pleaded are insufficiently similar to the primary allegation about Gabriel Strickland. See Defendant's Memorandum in Support of Motion to Dismiss ("Memorandum") at pp. 8-11.

A review of the factual allegations in *Howie v. Nevada County*, et al, 2:18-CV-03146-JAM-KJN ("*Howie*"), shows the weakness of Defendant's comparison. First, in *Howie* there was not just one NCSO deputy that was guilty of excessive and totally unnecessary force as asserted by Defendant (Memorandum, p. 10:24-26), *there were seven*: Deputy Grizzle and six NCSO officers (Does 1-6) who used outrageous physical force against Mr. Howie. Some of these six Doe defendants may be the same as the NCSO defendants named in this action.

A review of the incident video[4] shows Mr. Howie cooperating with NCSO Deputy Grizzell and Grass Valley Police Officer Herrerra (the arresting officer) entering the booking area at the Nevada County jail.  Mr. Howie is handcuffed behind his back and was asked to stand facing the wall, which he did.[5]  Then Mr. Howie turned his head to one side and NCSO Deputy Grizzel jumped on top of him and forced him over onto the floor, severely fracturing Howie's right knee.  Then NCSO jail officers Does 1-6 join in what is best described as totally unnecessary "pile on" of Mr. Howie, during which he was placed in hand and ankle shackles. Unable to stand on his own, Mr. Howie was raised up by these peace officers, taken to a holding cell, and then dumped onto a floor mat – all while still wrist and ankle shackled.  Mr. Howie received no medical care the entire night, was placed into a wheel chair the next morning, was denied transport to the ER, wheeled out the back door of the jail after lunch, lifted out of the wheel chair and placed on the curb to fend for himself.  Mr. Howie was ultimately transported to the ER by the Nevada County Fire Department. *Howie* Complaint ¶¶ 25-35.

The factual allegations in *Howie* demonstrate the callous disregard of NCSO

---

[4]     This video was Exhibit 3 to the Howie complaint and is also the third document in Plaintiffs' accompanying Request for Judicial Notice.

[5]     The Complaint in ¶ 74, alleges that Mr. Howie suffered from mental disability.  This was unnecessary to allege in the Howie v. Nevada County case, 2:18-cv-03146-JAM-KJN, but it has been specifically alleged here and Plaintiffs can show that Mr. Howie's mental disability was a factor in his turning his head slightly away from the wall which infuriated Deputy Grizzel, unleashing his outrageous use of force.

deputies towards the mentally ill, the utter lack of training for NCSO deputies and jail officers when interacting with the mentally handicapped, and a clear pattern of using extraordinary excessive force against mentally ill detainees.

In addition to the Howie case, Plaintiffs' alleged the criminal case of the *People v. Adam Grizzell*, Nevada County Superior Court Case No. M18-001437 which involved an entirely separate incident where NCSO Grizzell slammed the head of an arrestee into a wall on June 27, 2018.   Complaint ¶ 75.  In the interim between smashing Mr. Howie into the ground on January 11, 2018 and June 27, 2018, Defendant Nevada County did not take any corrective measures, change any use of force policies, and did not conduct any re-training on the use of force. Complaint ¶ 76.

Finally, Plaintiffs allege the case of *Peterson v. Nevada County, et al,* E.D. Cal. Case No. 2:19-cv-00949-JAM-EFB in the Complaint at ¶ 87. In that case, Mr. Peterson, who was suffering from mental illness, had been released from Nevada County's WBCF without examination or treatment just two days before the events in his complaint.[6]  Excessive force was used in the arrest process, injuring his leg and causing a MRSA infection that Defendants Nevada County and Wellpath failed

---

[6]    In fact, he had been to the county's Behavioral Health Department and Sierra Nevada Memorial Hospital earlier on the day of his arrest seeking mental health treatment, but he was denied any evaluation or care.  Feeling desperate, he faked a scene in the parking lot of Sierra Nevada Memorial Hospital just to be re-arrested and hopefully receive some mental health care at the county's jail.  These facts were not alleged in his complaint because they were not relevant to his injury during arrest or the subsequent failure to treat his infection at the jail.

to treat, almost killing Mr. Peterson.

These prior outrageous uses of excessive and unnecessary force against mentally ill or deficient arrestees provides sufficient multiple instances for pleading the excessive force claims against Defendant County under *Monell* in the Fourth and Twelfth Causes of Action.

C.   **Requests for Judicial Notice of Recent Excessive Force by NCSO Deputies Resulting in Death to Mentally Disturbed Persons**

Plaintiffs have requested the Court to take judicial notice of the incident video prepared and published by the NCSO which is the first document in Plaintiffs' accompanying Request for Judicial Notice ("Strickland Video").[7]   This video shows the incident in considerable detail and makes clear that this single instance is more than sufficient to meet the Supreme Court's test.

Since the Strickland shooting, Defendant Nevada County has continued to ignore its constitutional obligation to have adequate policies and/or to train its deputies about the use of force when detaining or arresting persons with mental health problems.  This resulted in the February 4, 2021, death of a young mother (Ms. Crawford) who was shot to death by NCSO deputies in Alta Sierra, California. Plaintiffs request the Court to take judicial notice of the NCSO incident video which is the second document in Plaintiffs' accompanying Request for Judicial Notice ("Crawford Video").  If the Court decides that additional incidents should be pleaded, this incident can be added in an amended complaint.

---

[7]     The applicable law for taking judicial notice is set forth in the Request.

12

The Crawford video again shows the apparent absence of any training of the NCSO deputies in responding to someone with serious mental health issues. The deputies were notified in the dispatch call that the subject of interest was a mother acting strangely. This should have alerted them that a careful approach and de-escalation techniques would be necessary upon arrival at the scene. Further, they should have been able to have NCSO dispatch notify a mental health professional or negotiator (either on staff or available by emergency telephone call) for assistance.[8] Finally, the deputies should have been properly trained for such a mental health situation. This *requires actual field training*, not just the issuance of a policy document. The result was predictable: an unnecessary death and traumatic shock to the victims's young two children who watched the deputies shoot her in the back.

If the Court is unwilling to allow Plaintiffs' Fourth and Twelfth Causes of action to proceed as alleged, Plaintiffs request leave to amend.

IV.   **The 7th and 15th Causes of Action are Properly Pleaded under** *Monell*

    A.   **The Complaint Alleges a Single Instance that Proves the Deliberate Indifference of Nevada County**

Defendant bases its defense on two grounds. First, that the allegations are merely conclusory and second, that the allegations do not sufficiently identify the challenged policy or practice. Defendant's Memorandum, p. 12:10-17. Second, the

---

[8]   Plaintiffs are informed since the filing of the Complaint that the NCSO has recognized its deficiency in this area and has created a "crises team" to respond to and assist with just such calls. Plaintiffs are investigating why this crisis team was not called to the scene by the deputies or NCSO dispatch.

13

prior incidents alleged do not support the allegations.  Both of these contentions are incorrect.

Plaintiffs have alleged specific, detailed, and non-conclusory allegations about the *actual* history of mental health evaluation and treatment for Gabriel Strickland at the Nevada County jail, the failure of Defendant to do any mental health evaluation, and the failure of Defendant to provide any mental health care for Gabriel Strickland during his incarceration between December 26 to 28, 2019. Complaint ¶¶ 27-29.

Further, the Complaint alleges very specific facts about how Gabriel Strickland was released from custody on December 28 or 29th without Defendant Nevada County or its contract medical provider, Wellpath, providing any report about Gabriel Strickland's mental health status to the Nevada County Probation Department, the Nevada County District Attorney's Office, or the Nevada County Superior Court.  The allegations also point out that these county departments and the Superior Court are entirely reliant upon Defendant's Nevada County's Sheriff's Office to prepare and transmit *accurate reports of an inmate's mental health* so that the Probation Department, District Attorney and Public Defender can make informed recommendations to the Superior Court about the release of Gabriel Strickland.  Complaint ¶¶ 30-31.

Plaintiffs then make detailed allegations in the Seventh and Twelfth Causes of Action describing the specific constitutional deficiencies in Nevada County's policies and practices, the failure to train or supervise Nevada County NCSO and

14

Wellpath personnel in conducting mental health examinations and providing appropriate treatment, and then the specific consequences of these failures, with the resulting harm to Gabriel Strickland.  Complaint ¶¶ 146-153; 224-231.

Plaintiffs' allegations could not be more specific and less conclusory at the pleading stage.  These allegations paint a picture of a *single instance of utter failure* by Nevada County to meets it obvious constitutional duty.[9]  Despite the fact, as alleged, that Gabriel Strickland was known to Defendant's NCSO jail staff for years prior to December 2019, as having serious mental health issues, there was no mental examination by a licensed medical professional.  There was no treatment of any kind.  There was no report or evaluation prepared by the NCSO or its contractor, Wellpath.  Complaint ¶ 28.

At this juncture in the development of the constitutional obligation of governments to provide mental health care to inmates, a single instance such as presented by this action where the allegation is that there was *no mental health care of any kind*, not even an examination by a qualified physician, the deliberate

---

[9]     The requirement that state and municipal governments provide mental health care to inmates under the Eight Amendment cannot be questioned. In fact, some of the most detailed and extensive litigation in this area of law arose and has been prosecuted in the Eastern District Court of California for over 25 years. See e.g., *Coleman v. Wilson*, 912 F Supp (E.D. Cal 1995) to the recent *Coleman v. Newsom*, 424 F. Supp 3d (E.D. Cal. 2019).  The allegations in this Complaint show how the failures of Defendant's Nevada County Sheriff's Office Wayne Brown Correctional Facility are not only parallel to those in the *Coleman* cases, they are even worse.  Defendant, and its contractor Wellpath, do not even provide the most basic component of mental health care – a mental health evaluation by a licensed psychiatrist.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

indifference requirement for a *Monell* claim should be satisfied.

Plaintiffs' allegations are factually specific, non-conclusory, and specifically identify the constitutionally deficient policies, practices, and procedures of Defendant Nevada County as required under *Iqbal at* 678-679, *Twombly at* 555, or *AE ex rel. Hernandez v. County of Tulare*, 666 F. 3d 631, 637 (9th Cir. 2012).

> ### B. Plaintiff Has Pleaded Multiple Instances to Support the 7TH and 15th Causes of Action

As discussed above, Plaintiffs have also alleged the cases of Mr. Howie, Complaint ¶ 74, and Mr. Peterson, Complaint ¶ 87, where these individuals with mental health disabilities were seriously injured by NCSO deputies and GVPD officers in the course of their arrest and booking at the Defendant's WBCF.

Although Plaintiffs did not allege in the Complaint a second instance where an inmate at the Nevada County's WBCF was not given a mental health examination or treatment prior to release, just like Gabriel Strickland, the further details of what happened to Mr. Peterson are substantially similar and can be pleaded in an amended complaint if the Court finds that necessary.

Plaintiffs will be able to allege that Mr. Peterson was in custody at WBCF on or about September 2-3, 2018 and that his jail medical records show that he was having significant mental health problems that made him unable to cope or to function on his own. However, rather than evaluate and treat Mr. Peterson, he was released from custody and put out onto the streets. By September 5, 2018, his mental health symptoms were so severe, he staged an incident in the parking lot of

Sierra Nevada Hospital to get himself arrested so he would not harm himself or another and possibly get some mental health care at WBCF.

What happened to Mr. Peterson could easily have led to the use of lethal force against him, just like it did with Gabriel Strickland. What prevented such a tragedy was not the training of the responding officers, but Mr. Peterson's cognizance that he would be injured or even shot if he did not immediately tell the arresting officers that he was having a mental breakdown and that he wanted them to arrest him so he could get help.

In contract, Gabriel Strickland was released in such a diminished and confused mental state that he was unable to understand the commands of the officers or why they could not see that he just had a toy gun.  The officers had no training in how to de-escalate or handle the situation without using force, and Gabriel's tragic death resulted.

Since the filing of the Complaint, Plaintiffs have come into possession of a number of Nevada County records showing that Defendants Nevada County and Wellpath are seriously deficient in performing mental health evaluations and providing treatment at the WBCF.  Inmates are not given even the most basic mental health care and are routinely released without any treatment.  There is a clear pattern of failure by Nevada County and Wellpath in their constitutional obligations that is comparable, if not worse, than that shown in the *Coleman v. Wilson* line of cases discussed in note 9, *supra*.

17

V.    **State Law Claims**

A.    **The Twentieth Cause of Action**

Defendant challenges the Twentieth Cause of Action on the grounds that the California Constitution, Article I, Sections 1 & 7 do not provide for a private right of action. Although the Plaintiffs do not concede the correctness of the Defendant's legal argument in this regard because the law is still developing, Plaintiffs have no objection to removing the references to Section 1 & 7.

Plaintiffs core allegations are more concerned with California Constitution, Article I, Section 13. Notably, Defendant does not challenge Plaintiffs' claims under this section, thereby impliedly conceding that it states a good cause of action. In fact, the District Court has recently held that a plaintiff may bring a private right of action under Article I, Section. See e.g., *Maric v. Alvarado*, 2020WL949938 (E.D. Cal. 2020) at p. 6; see also, *Velasquez v. County of San Bernadino*, 2018WL6061204 (C.D. Cal. 2018), at p. 2, where the district court discussed the prior disputed history of rulings on this question and found that the framers of the California Constitution "intended to incorporate those remedies provided at common law" for actions under Section 13.

If the Court so orders, Plaintiffs will remove any reference to Article I, Sections 1 & 7, leaving Section 13 as the sole basis for the cause of action.

B.    **The Twenty First Through Twenty Fourth Causes of Action**

Defendant acknowledges that these causes of action properly plead vicarious liability as the basis of liability for Defendant Nevada County. Memorandum at

18

15n2 and 16n3.

Despite this fact, Defendant appears to challenge mis-perceived allegations of direct liability based upon Complaint ¶¶ 288, 295, 303, and 311.  Memorandum at p. 15-18.  This is an incorrect reading of these paragraphs.  Plaintiffs pleaded these as foundation for the vicarious liability of Defendant.  The operative paragraphs for vicarious liability in the Complaint (¶¶ 289, 297, 305, and 313) govern the pleading of the respective cause of action as it concerns Defendant Nevada County.

There is a clear and unambiguous pleading of vicarious liability under each of these causes of action and there is no basis to dismiss any of them.  However, if Complaint 288, 295, 303, and 311 are confusing, they can be re-phased or deleted.

VI.    **Defendant's Failure to Answer or Otherwise Plead to the 17th, 18th or 19th Causes of Action**

The Complaint also names Defendant Nevada County in the Seventeenth through Nineteenth Causes of Action.  To date, no answer or responsive pleading has been filed by Defendant for these three causes of action.[10]  Thus, Defendant is in default and Plaintiffs are filing a request for the clerk to enter a default, followed by a motion for default judgment.

---

[10]    The Defendant did file a purported "Joinder" (ECF 21) to Defendant City of Grass Valley's FRCP 12(b)(6) motion (ECF 16) on February 26, 2021.  The "Joinder" cites no supporting law and does not contain any explanation as to why Defendant has not answered or pleaded as required by FRCP 4 within 20 days of the service of the Complaint.

IV.   **Conclusion**

The Supreme Court's observation in *City of Canton* about *Monell* is the most instructive statement of the applicable law in this case:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.[10] In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury. *City of Canton* at 390.

Based upon the Complaint's allegations and the applicable law, this Court should *let the jury decide* if the Defendant has been deliberately indifferent as alleged in the Complaint.  Accordingly, the Defendant's motion to dismiss the 4th, 7th, 12th, and 15th causes of action should be denied. If the Court grants the motion for any of the causes of action, Plaintiffs request leave to amend.

All of the state law claims (nos. 20 to 24) are properly pleaded and should not be dismissed.  However, if the Court so orders, Plaintiffs will amend to clarify the state law claims.

Dated: March 11, 2021                  Respectfully,


                                        By:  /s/  Patrick H. Dwyer
                                        Patrick H. Dwyer, Counsel for Plaintiffs

20