1  Patrick H. Dwyer, SBN 137743
2  P.O. Box 1705, Penn Valley, CA 95946
   Tel: (530) 432-5407; Fax: (530) 432-9122
3  Email: pdwyer@pdwyerlaw.com
   Attorney for Plaintiffs Estate of Gabriel Strickland,
4  N.S., and Shawna Alexander

5

6          IN THE UNITED STATES DISTRICT COURT
7          FOR THE EASTERN DISTRICT OF CALIFORNIA

8

9   Estate of Gabriel Strickland, N.S., and          CASE NO.: 2:21-CV-000175-MCE-AC
10  Shawna Alexander,
         Plaintiffs,                                  PLAINTIFF'S OPPOSITION TO
11                                                    DEFENDANT CITY OF GRASS
12  vs.                                               VALLEY'S MOTION TO DISMISS

13                                                    Date: April 8, 2021 (vacated)
    Nevada County, California, et al.,
14       Defendants.

15                                                    The Honorable Morrison C. England

16

17

18

19

20          Defendant City of Grass Valley has filed a motion (ECF 16) under FRCP

21  12(b)(6) to dismiss Plaintiff's *Monell* claims and certain state law claims ("Motion").

22  Plaintiffs submit this Opposition to Defendant's Motion.

23

24

25

26

27

28

## Table of Contents

I.      Introduction ............................................................. 1

II.     Applicable Law

        A.      Motions to Dismiss .................................................. 3

        B.      Use of Force Analysis: The Totality of Circumstances ........... 4

        C.      The Reasonableness of the Use of Force is a Jury Question .. 4

        D.      *Monell* Claims ............................................................. 5

III.    The 5th and 13th Causes of Action are Properly Pleaded under *Monell*

        A.      Analysis of the Totality of the Circumstances ........................ 7

        B.      Other Factors in the Totality of the Circumstances

                1.      Availability of Less Intrusive Alternatives .................. 9

                2.      Proper Warnings Were Not Given ................................ 10

                3.      It Was Obvious that Gabriel Was Not Mentally Well      10

        C.      The GV Officers Worked as an Integrated Team and
                Any of Them Could Have Stopped the Tragic Loss of Life .... 10

IV.     The 5th and 13th Causes of Action are Not Conclusory or Vague ..... 12

        A.      Single Instance is Sufficient for Monell Claim ...................... 13

        B.      Plaintiffs Have Also Pleaded Multiple Instances
                in Support of the 5TH and 13th Causes of Action ..................... 14

V.      The 17th and 18th Causes of Action are Properly Pleaded Because
        Gabriel Strickland Was Entitled to a Reasonable Accommodation

        A.      Applicable Law of the ADA and Rehab Act ........................... 16

        B.      Application of the Law to the Alleged Facts ........................... 17

i

V.      State Law Claims ............................................................................ 17

        A.      The Twentieth Cause of Action ................................................. 17

        B.      The Twenty-First Causes of Action ........................................... 18

        C.      The Twenty-Third Cause of Action ............................................ 19

        D.      No Additional Challenges to the 22rd or 24th Causes of Action      19

IV.     Conclusion ............................................................................... 20

1

## Table of Authorities

2
**United States Supreme Court**

Page

3

4
*Connick v. Thompson*, 563 U.S. 51, 63-64 (2011) .................................   6

5
*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................................   3, 16

6
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .........................   3, 16

7
*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997) ...........   3

8

9
*Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397 (1997) .........................................   4

10
*Graham v. Conner*, 490 U.S. 386, 396-97 (1989) .................................   4

11

12
*City of Canton v. Harris*, 489 U.S. 378 (1989) ......................................   3n2, 4-6

13
*City of Oklahoma v. Tuttle*, 471 U.S. 808 (1985) ..................................   5

14
*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)   2

15
**United States Courts of Appeal**

16
*Tubares v. City of Huntington Beach*, 2021WL609854 (9th Cir. 2021).   19

17

18
*Lam v. City of Los Banos*, 976 F.3d 986 (9th Cir. 2020) ......................   7

19
*Vos v. City of Newport Beach*, 892 F3d 1024 (9th Cir. 2018) ...............   16

20
*Mendez v. County of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018) .....   19

21

22
*Reese v. City of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ................   18

23
*S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017) ..............   4

24
*George v. Morris*, 736 F3d 829 (9th Cir 2013) .....................................   7

25
*AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631 (9th Cir. 2012) .   4, 16

26
*Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011) ...............   4-5

27

28
iii

*Long v. City & Cnty. of Honolulu*, 511 F.3d 901 (9th Cir. 2007) ........    8

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ...................    6

*United States v. Koon*, 34 F.3d 1416 (9th Cir. 1994) ..........................    11n10

*O'Neil v. Krzeminski*, 839 F.2d 9  (9th Cir. 1988) ...............................    11n10

**United States District Courts**

*Frias v City of Los Angeles*, 2020 WL4001622 (CD Cal 2020) .............    19

*Peck v. County of Orange*, 2020WL7767613 (C.D. Cal 2020) ..............    11n10

*Maric v. Alvarado*, 2020WL949938 (E.D. Cal. 2020) ...........................    18

*Varo v. Los Angeles County District Attorney's Office*,
    473 F. Supp. 3d 1066 (C.D. Cal. 2019) .......................................    3, 6

*Nunez v. City of San Jose*, 381 F. Supp. 3d 1192 (N.D. Cal 2019) .......    7

*Velasquez v. County of San Bernadino*, 2018WL6061204
    (C.D. Cal. 2018) ..........................................................................    18

*Mendez v. County of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018) ........    19

**United States Statutes**

42 U.S.C. § 1983 ...........................................................................    3, 5n3, 5

Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA") ....    16

Rehabilitation Act, 29 U.S.C. 701, et seq. ("Rehab Act") ......................    16

**Federal Rules of Civil Procedure**

Federal Rule of Civil Procedure 12(b)(6) .................................................    2, 7

**California Law**

California Constitution, Articles 1, 7, & 13 ...........................................    17-18

I.   **Introduction**

The basic facts are not in dispute.  On New Year's Day 2020, Gabriel Strickland was walking through a quiet neighborhood in Grass Valley, California with an Airsoft BB gun that was clearly marked with the orange tip required by law so that police would not confuse a toy for a real gun.

Gabriel did not brandish the toy weapon and or assault anyone with it. There was no crime in progress and no urgency.  The GV Officers knew that Gabriel suffered mental health issues.  Despite these situational facts, they formulated their "Plan" to deploy officers with high-powered assault rifles and simultaneously surround Gabriel.  Well-known de-escalation tactics or even a call for specialized help (e.g., a mental health professional or trained negotiator) were ignored.

These tragic facts paint a clear picture: the GV Officers had no idea how to handle a simple toy gun check, except by overwhelming use of lethal force.  The Strickland video[1] shows that the officers were well trained in using lethal weapons, but it also shows that they had no clue when to use lethal force or how to de-escalate and communicate calmly with a mentally disabled person.

As soon as the officers  surrounded Gabriel, they jumped from their cars and shouted obscene demands to drop the gun.  Despite the abrupt, harsh tactics, Gabriel calmly tried to explain for several minutes that it was just a toy.  But

---

[1]     Plaintiffs' judicially noticed this video (ECF 22-1) for their Opposition to Nevada County's Motion to Dismiss. Plaintiffs' renew the same request for judicial notice for this Opposition to the City of Grass Valley's Motion to Dismiss.

instead of exploiting Gabriel's willingness to talk as an opportunity to calmly negotiate a resolution, the officers just became more agitated. As their frustration grew, their vision became tunnel focused: they lost sight of the simple goal of checking if the weapon was a toy or real. The officers lost objectivity and became obsessed with making Gabriel "obey" their commands. They forgot whatever training they may have had in peaceful resolution. Instead of asking for help, the officers proceeded with their tactical assault as if it was the only solution. The tragic end was predictable: three bullets to Gabriel's chest.

The City of Grass Valley grounds its defense to all claims on the assertion that the GV Officers's use of force was reasonable. It does this under the popular police maxim: if the victim points a gun at an officer, the officer has the absolute right to use lethal force. However, that is not the law, and for obvious good reasons. When, as in this case, there is no urgency, no crime in progress, the victim neither attacks the officers nor flees the scene, and he is willing to talk, the police cannot ignore their obligation to de-escalate, communicate calmly, and call for specialized help. These peaceful, non-lethal approaches are essential to constitutional police work when, as in this case, the victim was known to have mental health issues.

Looking at the municipal liability in this case, the Supreme Court has made it very clear that a *single* instance of the use of lethal force such as happened to Gabriel, will support a claim under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)("*Monell*"). When the failure to train, supervise,

and/or enforce constitutional policies on using lethal force is "so obvious"[2], *Monell's* "deliberate indifference" pleading requirement is satisfied.

## II.   Applicable Law

### A.   Motions to Dismiss

In evaluating the sufficiency of a complaint, courts must accept all factual allegations as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*"), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*") . To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Although a pleading need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." (Emphasis added). *Iqbal* at 678.

To state a 42 U.S.C. §1983 claim, Plaintiffs must plausibly allege that a person acting under color of state law deprived them of a federal constitutional or statutory right. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 180 (1997).

Although the *Iqbal* and *Twombly* decisions "heightened the traditionally lax pleading requirements for Monell claims, the standard is no stricter for Monell claims than for other allegations." *Varo v. Los Angeles County District Attorney's*

---

[2]    This term is quoted from the Supreme Court's decision in the *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

*Office*, 473 F. Supp. 3d 1066, 1076 (C.D. Cal. 2019)("*Varo*"), citing to *AE ex rel.*

*Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

B.   **Use of Force Analysis: The Totality of Circumstances**

The Supreme Court's decision in *Graham v. Conner*, 490 U.S. 386, 396-97

(1989) ("*Graham*"), sets forth the conceptual analysis to be used for evaluating use

of force claims.   Under *Graham*, a multi-part analysis is necessary to ascertain the

"totality of circumstances" around the use of force.   The *Graham* analysis has three

factors to consider: "(1) the severity of the crime at issue; (2) whether the suspect

posed an immediate threat to the safety of the officers or others; and (3) whether

the suspect actively resisted arrest or attempted to escape."   *S.B. v. County of San*

*Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (citing *Graham*, 490 U.S. at 396).

*Graham* made clear that these are not exclusive and others factors should be

evaluated, including: "the availability of less intrusive alternatives to the force

employed, whether proper warnings were given and whether it should have been

apparent to officers that the person they used force against was emotionally

disturbed."   *Id.* (quoting *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir.

2011)).

C.   **The Reasonableness of the Use of Force is a Jury Question**

In excessive force cases, the courts have consistently denied both summary

judgment and judgment as a matter of law because there almost always are, as in

this case, disputed facts that only a jury can decide.   The Ninth Circuit made this

very clear in *Glenn v. Washington County*, 673 F. 3d 864, 871 (9th Cir. 2011) where

4

it stated that "[b]ecause [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly."

D.   *Monell* Claims

To state a claim against a municipality under §1983, a plaintiff may not allege mere *respondeat superior* liability, but instead must allege facts that, if proven, will demonstrate the municipality's acts or omission as the cause of the constitutional harm as distinguished from the acts or omissions of its employee. There are three ways a plaintiff may successfully plead a *Monell* claim.

First, the plaintiff can allege a single incident of harm that, if proved to have occurred, will also prove the existence of the municipality's unconstitutional policy.[3]

Second, the plaintiff may allege two or more instances in which the acts or omissions of the municipality's employees prove the municipality's failure to have or enforce a constitutional policy or procedure, or failure to properly train or supervise its employees therein, and that such failure(s) caused the violation of plaintiff's constitutional rights.   See *City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985).

Third, the Supreme Court in *City of Canton v. Harris*, 489 U.S. at 390, recognized that there can be situations in which, even though there may not be an

---

[3]      For example, a plaintiff can allege that he went to vote, but was told by the municipality that he had to pay a city poll tax to vote.  If Plaintiff can prove that he had to pay the tax in order to vote, then he has proven the municipality's unconstitutional policy and the right to recover under 42 U.S.C. §1983.

express unconstitutional policy such as in the first pleading option discussed above, the subject matter of the policy area is "so obvious" a matter of constitutional concern for a municipality that the failure of a municipality to address it *can be deemed to constitute deliberate indifference* to the rights of persons with whom officers come into contact and a plaintiff need only allege a *single instance* to state a valid claim.  To make its point, the Supreme Court used *a failure to train* example:

> But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.  *City of Canton* at 390.

Then in footnote 10, the Supreme Court presented the example of a municipality giving guns to its law enforcement officers, but failing to train them in the constitutional use of deadly force.  This *single instance* exception has been noted in subsequent Supreme Court decisions on *Monell* claims.  See *Connick v. Thompson*, 563 U.S. 51, 63-64 (2011); *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 409 (1997).

Most importantly, whether a "local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Varo at* 1076, citing to *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001).  As shown below, Plaintiffs have alleged facts sufficient to withstand Defendants FRCP 12(b)(6) motion under both the second and third described forms of *Monell* pleading.

III.   **The 5th and 13th Causes of Action are Properly Pleaded under *Monell***

The City of Grass Valley has moved under FRCP 12(b)(6) to dismiss the Fifth and Thirteenth Causes of Action on the assertion that there was no constitutional violation by the GV Officers because their use of force was reasonable.

A.   **Analysis of the Totality of the Circumstances**

This purported defense leads directly to the factual review required under *Graham* of the "totality of circumstances".  The following is an analysis of the factual allegations in the Complaint in accordance with *Graham*.

The totality of circumstances, by definition, means *the entire encounter* between the police and the victim, from the dispatch call to the final use of force. See e.g., *Lam v. City of Los Banos*, 976 F.3d 986, 996-998 (9th Cir. 2020); *Nunez v. City of San Jose*, 381 F. Supp. 3d 1192, 1205-1212 (N.D. Cal 2019).  However, Defendant ignores the "totality" element and focuses only on the last few seconds of the incident.[4]

Defendant asks the Court to put on blinders, look at only the last few seconds, and apply an incorrect maxim: i.e., "if the victim points a gun at an officer, the officer has the absolute right to use lethal force". That is not the law. As the Ninth Circuit has explained in many cases: "the fact that the 'suspect was armed with a deadly weapon' does not render the officers' response per se reasonable under the Fourth Amendment." *George v. Morris*, 736 F3d 829, 838 (9th Cir 2013),

---

[4]   Ironically, and in contradiction to almost the entire Motion to Dismiss, Defendant makes this very point in its Memorandum at p. 16:2-10.

quoting from *Long v. City & Cnty. of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007).

### Graham Factor #1: The Severity of the Crime at Issue

There was no reported crime and no discernable threat of any crime. Thus, there was nothing to warrant any use of force.  Complaint ¶¶ 25, 37.

### Graham Factor #2: There Was No Immediate Threat

The dispatch call reported a man walking with a gun, but that he "'didn't seem like upset or anything". Complaint ¶ 25. There were no reports to the police that he ever brandished the toy gun, threatened anyone, trespassed onto private property, or acted in any manner threatening public safety.  Complaint ¶¶ 36-37.  Even after the GV Officers arrived, there was no threat by Gabriel.

### Graham Factor #3: Gabriel Never Actively Resisted Or Tried to Flee

Gabriel never tried to hide, evade, or flee.  He stood with the gun pointing away from the GV Officers until the very end, when he knelt down with the toy gun pointed skywards.  His words and actions were neither provocative nor hostile, only explanatory.  Complaint ¶¶ 39-61.  Gabriel repeatedly told the GV Officers that it was a toy Airsoft rifle with a marked orange tip as required by law.[5] Gabriel even tapped on the barrel to let them hear it was plastic, not metal.  Complaint ¶¶ 26, 39-44.  In fact, officer Tripp is heard saying in the Strickland video  "[y]ou could have painted that ...", thereby acknowledging that the GV

---

[5]      Defendants admitted this fact at the end of the Strickland video which has been requested to be judicially noticed (ECF 22-1) as part of the Plaintiffs' Opposition (22) to the Motion to Dismiss filed by Nevada County (ECF 14).

officers saw the orange tip.  Complaint ¶ 45.  Gabriel did not brandish the toy and

most of the time he pointed it skyward or at the ground.  Complaint ¶¶ 46-48.

B.     **Other Factors in the Totality of the Circumstances**

1.     **Availability of Less Intrusive Alternatives**

As alleged in the Complaint (¶ 50), the officers could have used, but

did not, any number of standard de-escalation techniques.  Indeed, the actions of

the officers inflamed the situation and made the use of lethal force inevitable in

their own minds.[6]  For example, they kept shouting commands with foul language.

If they had been calm and polite, Gabriel might have responded differently.[7]

When officer Hooper failed with the taser, he and the other GV

Officers could have moved back a few feet and re-assess.  Unfortunately, the GV

Officers panicked, then moved forward screaming commands and shot Gabriel dead.

Complaint ¶ 60-61.  The GV Officers could and should have backed up, or at least

stop their forward march on Gabriel, and re-assessed the situation.[8]

---

[6]     This glaring failure goes against the express direction of the California legislature and the California Peace Officers Standards and Training ("POST") Commission manual on De-escalation Strategies and Techniques.  A copy of this manual is Exhibit 1 to Plaintiffs' accompanying Request for Judicial Notice.

[7]     The GV Officers could have told Gabriel that if it was a toy, they would let him go.  This would have psychologically enabled alternatives, like putting the toy on the ground, backing up a few feet and letting an officer inspect the weapon.

[8]     This is exactly the opposite approach to what is taught by the California POST Commission which defines de-escalation as "... the process of using strategies and techniques intended to decrease the intensity of the situation." POST Manual, p. 45.  The POST Manual at p. 48 teaches that "t]he most effective law enforcement professionals possess a forward, a neutral, and a reverse."

9

### 2.   **Proper Warnings Were Not Given**

The officers that came to the incident scene under the "Plan" (see Complaint ¶34), immediately drew their weapons, and began shouting "drop the fucking gun".  Complaint ¶ 39.   If they had calmly and politely approached Gabriel and asked to take a look at the gun, he would likely still be alive. Proven de-escalation techniques emphasize calm, deliberative thinking about how to control the situation instead of *being controlled by the situation*.  Complaint ¶¶ 51-60.

### 3.   **It Was Obvious that Gabriel Was Not Mentally Well**

It was obvious to anyone watching Gabriel at the incident scene that he was not in a normal state of mind.  Complaint ¶49.  A normal person would have simply put the gun on the ground.  More importantly, the GV Officers knew who Gabriel was: a homeless man with mental health issues.  They also knew that he had just been released from custody.[9]  Complaint ¶¶ 32-33.  There was ample time for the GV Officers to call for a mental health professional or a trained negotiator. Gabriel was obviously in a mental state that could not correctly evaluate how he should respond to the GV Officer's demands. Complaint ¶50-51.

### C.   **The GV Officers Worked as an Integrated Team and Any of Them Could Have Stopped the Tragic Loss of Life**

Defendant City of Grass Valley further asserts that unlike GV Officer Hooper, GV Officers Grube and Ball did not open fire on Gabriel Strickland, and

---

[9]      During the Strickland Video one of the GV Officers kept calling out to "Gabe" in a familiar manner, clearly revealing that he knew Gabriel.

therefore, there is no basis to allege excessive force against them.  Memorandum at 9:11-28.  Defendant admits that under the law, fellow officers at an incident scene *have a duty to intercede* to stop the violation of a victim's constitutional rights.[10] However, Defendant contends that this rule does not apply because the shooting death was reasonable and there are no allegations that GV Officers Grube or Ball had a realistic opportunity to intercede and prevent the death of Gabriel.

As shown above, the death of Gabriel was the direct result of the Plan that the GV Officers formulated as a team and then carried out *as a team*.  All three GV Officers played their assigned role in the Plan without objection and all three GV Officers failed to use any de-escalation techniques.  All three GV Officers were heavily armed and had their weapons trained upon Gabriel, ready to fire with deadly intent at any false move.  All of the GV Officers were in radio and verbal contact with each.  Any one of them could have objected as the Plan unfolded or suggested an alternative approach or even that they just slow down and back off.  There was plenty of time for any of them to radio GV police headquarters and ask for supervisor assistance.

All three GV Officers knew Gabriel and his mental health issues.[11] Even after

---

[10]     Defendant cited to *United States v. Koon*, 34 F,3d 1416, 1447n25 (9th Cir. 1994), but the leading Ninth Circuit case appears to be *O'Neil v. Krzeminski*, 839 F.2d 9, 11-12 (9th Cir. 1988). This was recently followed by *Peck v. County of Orange*, 2020WL7767613 (C.D. Cal 2020).

[11]     Indeed, one GV Officer can be heard calling out to "Gabe" because he knew Gabe and feared how the Plan would end.

the GV Officers came within about 15 feet, Gabriel just knelt and held the gun upright. It was glaringly obvious that Gabriel was not in a normal mental state, but not one of the GV Officers suggested that they stop and consider non-lethal alternatives. Instead, they together just kept screaming commands.

The combined acts and omissions of the GV Officers fueled Gabriel into more of a heightened paranoid and defensive state. Even though Gabriel knew it was only a toy gun, he felt so alone and threatened by the GV Officers at the very end, he just gave up and pointed the gun in a futile effort at self-defense.

There was an astonishing failure by any of GV Officer to intercede to stop the use of deadly force. Accordingly, all three should be held accountable.

IV. **The 5th and 13th Causes of Action are Not Conclusory or Vague**

Defendant City of Grass Valley also challenges the 5th and 13th Causes of Action on the ground that they contain conclusory and vague allegations about inadequate training and supervision. Memorandum at 10:1 to 11:14. These same defenses were asserted by Nevada County in its Motion to Dismiss (ECF 14) and Plaintiffs provided a thorough rebuttal in their Opposition (ECF 22). The following is an abridged version of Plaintiffs' arguments as they apply to Grass Valley.

The above-cited Supreme Court decisions long ago put municipalities on notice that they would be liable under *Monell* if they did not adopt appropriate policies for the constitutional use of force and then train their law enforcement officers accordingly. This included specific policies and field practices for the mentally disabled. Thus, the City of Grass Valley has been on notice for decades

12

that it would be liable under *Monell* for the allegations such as in the Complaint.

Defendant somewhat recognized its constitutional obligations in its GV Police UOF manuals.  Complaint ¶¶ 82-83.  However, Plaintiffs have alleged that these policies failed to include the specific policies and practices necessary to safely detain or arrest persons with mental illness; in particular, when and how to use lethal force.  Plaintiffs further allege that City of Grass Valley never undertook any specific or adequate training for its GV Officers, never supervised its GV Officers in this respect, and did not even enforce what limited policies it had adopted.  Complaint ¶¶ 84-86.  These failures demonstrate Defendant's deliberate indifference to the possible harm at the hands of GV Officers.

A.   **Single Instance is Sufficient for Monell Claim**

As discussed above, the Complaint alleges the meeting of the NCSO deputies and GV Officers to formulate a Plan.  Complaint ¶ 34-31.  The Complaint also alleges that the GV Officers knew Gabriel Strickland and that he suffered from serious mental illness.  Further, it alleges that Gabriel was released from custody shortly before his death without any mental health evaluation or treatment and that he was in a state where he was simply unable to support himself and unable to understand and reasonably respond to the commands of law enforcement.  Complaint ¶¶ 28-31.  Despite this knowledge, the GV Officers never called for any mental health professional or negotiation advice.   Complaint ¶¶ 27-31, 32-35.

It is obvious from the Strickland video that the GV Officers had no idea what they were doing and had not been properly trained for detaining or arresting a

person with mental health issues.  Complaint ¶¶ 49-51.  Instead, the GV Officers followed the only training that they had received: the full-on use of lethal force. The tragic result was predictable. Complaint ¶¶ 52-63.

The Supreme Court's recognition that a *single occurrence* could prove a municipality's *deliberate indifference* to an obvious constitutional deficiency in its policies and procedures is forcefully borne out by the events in this case. It was obvious from the Strickland video that a non-confrontational, de-escalation, approach was required. Gabriel was mentally incapable of responding to the GV Officers' threatening commands and overwhelming show of force.  But, lethal force was the only tool in the GV Officers' toolbox. In addition, no supervisor intervened to review the Plan or supervise the field operation.  These failures are such obvious failures in a the Defendant's constitutional duty that, as understood by the Supreme Court, this single instance suffices to plead a *Monell* claim.

B.  **Plaintiffs Have Also Pleaded Multiple Instances in Support of the 5ᵀᴴ and 13ᵗʰ Causes of Action**

Plaintiffs pleaded additional instances in which GV Officers used excessive force and caused serious bodily harm to an arrestee.  See Complaint ¶ 87-89.  The first is *Peterson v. Nevada County*, E.D. Cal. Case No. 2:19-cv-00949-JAM, in which the plaintiff, John Peterson, a person with mental disabilities who was seeking mental health assistance at the time of the incident, was arrested by several GV Officers, including Defendant Conrad Ball. One of GV's Officers attacked the plaintiff by forcibly trying to put his surgically repaired leg through locked

14

handcuffs even though he was not resisting. The officer's attack re-injured the

plaintiff's leg, causing a life threatening infection that took surgery and about six

weeks of hospital care to cure.

Plaintiffs also pleaded the case of *Howie v. Nevada County*, et al,

2:18-CV-03146-JAM-KJN.  In this instance, GV Officer John Hererra not only used

excessive force upon Mr. Howie, Officer Herrera failed to intercede to stop the

outrageous use of force by Deputy Grizzle and then joined in. The incident video[12]

shows Mr. Howie cooperating with NCSO Deputy Grizzell and GV Officer Herrerra

(the arresting officer) entering the booking area at the Nevada County jail.  Mr.

Howie is handcuffed behind his back and was asked to stand facing the wall, which

he did.[13]  Then Mr. Howie turns his head to one side and NCSO Deputy Grizzel

jumps on top of him and forces him over onto the floor, severely fracturing Howie's

right knee.  GV Officer Herrera fails to intercede and joins in the "pile on" of Mr.

Howie.  These factual allegations demonstrate the callous disregard of GV Officer

Herrera towards Mr. Howie, who is mentally disabled.  Obviously, there is a lack of

training, supervision, or enforcement by Defendant of constitutional policies or

---

[12]     This video is the third document in Plaintiffs' Request for Judicial
Notice that accompanies their Opposition (ECF 22) to Nevada County's Motion to
Dismiss (ECF 14).

[13]     The Complaint in ¶ 74, alleges that Mr. Howie suffered from mental
disability.  This was unnecessary to allege in the *Howie v. Nevada County* case, but
it has been specifically alleged here and Plaintiffs can show that Mr. Howie's
mental disability was a factor in his turning his head slightly away from the wall,
unleashing an outrageous use of force.

practices for its officers, especially when the interact with the mentally ill.

V.   **The 17th and 18th Causes of Action are Properly Pleaded Because Gabriel Strickland Was Entitled to a Reasonable Accommodation**

A.   **Applicable Law of the ADA and Rehab Act**

Plaintiffs agree with Defendant that the Americans with Disabilities Act, 42 U.S.C. §12101, et seq. ("ADA") and the Rehabilitation Act, 29 U.S.C. 701, et seq. ("Rehab Act") provide identical remedies, procedures, and rights, and therefore, are analyzed with the same legal framework.  *Vos v. City of Newport Beach*, 892 F3d 1024, 1036 (9th Cir. 2018)("*Vos*").  Memorandum at p. 11:24 to 12:1.

Defendants concede that the Rehab Act and ADA prohibit a public entity from discriminating against any "qualified individual with a disability." Defendants also do not assert that Gabriel Strickland was not a qualified individual or that he was not entitled to the benefits of these two laws.  The only defense that Defendant asserts to these two causes of action is that the use of force by the GV Officers was reasonable, and therefore, there was no failure to reasonably accommodate Gabriels' disability.  Memorandum at p. 12:2-15.

The analysis for determining the reasonableness of use of force against a qualified individual is the same as the reasonable use of force analysis in the §1983 context governed by the *Graham* analytical approach.  See *Vos* at 1037-1038.  The Ninth Circuit found in *Vos* that where the officers "had the time and opportunity to assess the situation and potentially employ the accommodations ... , including de-escalation, communication, or specialized help", the officers were required to

16

1   provide those accommodations.  That is almost exactly the situation in this case.

2       B.   **Application of the Law to the Alleged Facts**

3
4   As discussed above, the GV Officers had all the time they needed to

5   formulate the Plan and then execute it.  However, as alleged in the Complaint and

6   evidenced in the Strickland video, the GV Officers failed to utilize any de-escalation

7   methods, failed to communicate calmly, and failed to obtain any specialized help.

8
9   There was no urgency, Gabriel did not try to flee and he never tried to attack the

10  GV Officers.  What actually happened was the tragic unfolding of the Plan that only

11  contemplated the use of lethal force as the means to gain Gabriel's compliance.

12  As discussed in Section II.C, with any §1983 case, the question of

13  reasonableness of the officer's acts or omissions is for the jury.  The ADA and Rehab

14  Act claims are properly pleaded and are fully supported by the allegations in the

15  Complaint.  A jury will need to decide the matter or reasonable accommodation.

16
17  VI.   **State Law Claims**

18  Defendant asserts that the use of force was reasonable as a defense to all

19  state claims.  Memorandum at p 14:14-18.  This question has been addressed.

20  Defendant also asserts the following additional defenses.

21
22      A.   **The Twentieth Cause of Action**

23  The City of Grass Valley contends that the 20th Cause of Action fails because

24  there is no private right of action under Article I, Section 1.  Although Plaintiffs do

25  not concede the correctness of the Defendant's position because the law is still

26  developing, Plaintiffs have no objection to removing reference to Sections 1 & 7.

27

28                                17

Plaintiffs' core allegations in the 20th Cause of Action are concerned with Article I, Section 13.  Defendant does not challenge Plaintiffs' claims under this section, impliedly conceding that it states a good cause of action.  The District Court has recently held that a plaintiff may bring a private right of action under Article I, Section.  See e.g., *Maric v. Alvarado*, 2020WL949938 (E.D. Cal. 2020) at p. 6; see also, *Velasquez v. County of San Bernadino*, 2018WL6061204 (C.D. Cal. 2018), at p. 2, where the district court discussed the prior disputed history of rulings on this question and found that the framers of the California Constitution "intended to incorporate those remedies provided at common law" for actions under Section 13.

B.   **The Twenty-First Cause of Action**

Defendants challenge the 21st cause of action on the ground that there are "no allegations that any Grass Valley Police Officer intended to use unreasonable force against Mr. Strickland". Memorandum at p. 15:18-19.

In the Complaint at ¶ 286, Plaintiffs specifically allege that the GV Officers, "used threats, intimidation, coercion, and unnecessary and excessive force against Gabriel Strickland to interfere with his exercise and enjoyment of the rights secured by both the U.S. Constitution and the California Constitution."  Further, Plaintiffs alleged in Complaint ¶291 that the acts of the GV Officers were committed with "malice ... and done with callous disregard ... ."

Defendant correctly cites to *Reese v. City of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) ("*Reese*") for the proposition that the jury will need to find specific intent. However, Defendant failed to observe that in *Reese*, the Ninth Circuit further held

18

that the requisite "specific intent" could be found by a jury based upon the force

being unreasonable and "'more than necessary under the circumstances'". *Reese* at

1045.  This very point was made clear in *Frias v City of Los Angeles*, 2020

WL4001622 (CD Cal 2020) where the District Court upheld a verdict on a jury

instruction that the defendant officers intended to violate the victims right to be

free from excessive force and that the officers acted with a reckless disregard for the

victim's constitutional rights.  Plaintiffs have sufficiently pleaded the necessary

specific intent with the allegations of unreasonable force being applied with malice

and a callous disregard for the constitutional rights of Gabriel.

C.       **The Twenty-Third Cause of Action**

Defendants correctly argue that under California law the officer's pre-

shooting decisions can render his behavior unreasonable under the totality of the

circumstances, even if the use of deadly force at the moment of the shooting might

be reasonable in isolation, citing to *Mendez v. County of Los Angeles*, 897 F.3d

1067, 1082-83 (9th Cir. 2018) and *Tubares v. City of Huntington Beach*,

2021WL609854 (9th Cir. 2021).  Indeed, that has been at the core of Plaintiffs'

arguments throughout this Opposition.  Defendant then simply repeats a short

version of its previous argument that the shooting of Gabriel was reasonable.

Plaintiffs obviously disagree and this will be the question for the jury.  A valid claim

for negligence has been pleaded.

D.       **No Additional Challenges to the 22rd or 24th Causes of Action**

Plaintiffs do not find any challenges to the their 22nd or 24th claims other than

19

that the actions of the GV Officers was reasonable, which has been addressed.

VII.   **Conclusion**

Defendants agreed that the use of force must be viewed in the "totality of the circumstances", even when the use of force at the final moment might be reasonable if taken in *isolation*. When applied to this case, every claim raises a triable issue.

Plaintiffs' allegations show a single instance of failure in a policy area that is *so obviously a matter of constitutional concern for Defendant*, that it is, alone, sufficient for a jury to find that Defendant's failures in policies and training in the proper use of lethal force constituted deliberate indifference to the rights of Gabriel Strickland. Plaintiffs also pleaded two other cases of unreasonable use of force by GV Officers; thus, under any *Monell* pleading standard, Plaintiffs' claims suffice.

Defendant's challenge to both the ADA and Rehab claims was also based on the assertion that the use of force was reasonable. This has been addressed.

Similarly, the Defendant challenged the state law claims and the defenses fail for the same reason – it is a jury question.

If the Court grants the Motion in full or part, Plaintiffs request leave to amend.

Dated: March 25, 2021                    Respectfully,


By: /s/ Patrick H. Dwyer
Patrick H. Dwyer, Counsel for Plaintiffs

20