1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   ESTATE OF GABRIEL STRICKLAND,          No.  2:21-cv-00175-MCE-AC
     N.S., et al.,
12
                    Plaintiffs,
13                                          **MEMORANDUM AND ORDER**
           v.
14
     NEVADA COUNTY, CALIFORNIA,
15   OPERATOR OF THE NEVADA
     COUNTY SHERIFF'S OFFICE, et al.,
16
                    Defendants.
17

18          Through this action, the Estate of Gabriel Strickland, N.S., and Shawna Alexander

19   ("Plaintiffs") seek to recover damages from Nevada County, Sheriff Shannon Moon

20   ("Sheriff Moon" or "Moon"), Deputy Taylor King ("King"), Deputy Brandon Tripp ("Tripp"),

21   Officer Joseph McCormack ("McCormack"), the City of Grass Valley, Chief Alex

22   Gammelgard ("Gammelgard"), Officer Brian Hooper ("Hooper"), Officer Dennis Grube

23   ("Grube"), and Officer Conrad Ball ("Ball") ("Defendants").[1]  Plaintiff's Complaint alleges

24   twenty-five (25) causes of action under federal and state law.  ECF No. 1.  Presently

25   before the Court are four motions to dismiss: Defendant Nevada County (ECF No. 14);

26   Defendant Grass Valley (ECF No. 16); Defendants Moon, King, Tripp, and McCormack

27   ───────────────
            [1] Plaintiffs also bring suit against Wellpath Management Inc. ("Wellpath"), Brent Weldemere, and
28   Richard Donofrio.  These parties have elected to file answers (ECF Nos. 13, 46, 47, respectively) to the
     Complaint.

                                              1

1   (ECF No. 27); Defendants Gammelgard, Hooper, Grube, and Ball (ECF No. 30).[2]

2   Defendant Nevada City has joined Grass Valley in the arguments and relief requested

3   for Claims Seventeen and Eighteen.  ECF No. 21.  For the reasons that follow,

4   Defendants' Motions are GRANTED in part, DENIED in part.

5

6                                    **BACKGROUND**[3]

7

8        **A.   Officer-Involved Shooting**

9        On January 1, 2020, at approximately 12:46 p.m., Nevada County Region

10  Dispatch ("Dispatch") received reports that a man was walking on Squirrel Creek Road

11  with "what appeared to be a shotgun," but he did not appear to be upset.  The man was

12  25-year-old Gabriel Strickland ("Strickland"), and he was carrying a black airsoft rifle with

13  an orange tip.[4]  Responding to the call, two deputies from the Nevada County Sheriff's

14  Office ("NCSO") (King and Tripp) met with officers from the Grass Valley Police

15  Department ("GVPD") (Hooper, Grube, and/or Ball) near the intersection of Squirrel

16  Creek Road and Rough & Ready Highway.  Plaintiffs allege that these law enforcement

17  officers ("LEOs") knew that Strickland was a homeless man with mental health issues,

18  and that he had been released from custody of the local county jail (Wayne Brown

19  Correctional Facility, "WBCF") a day or two before.  Plaintiffs allege that the LEOs

20  consequently "knew that it was likely Gabriel Strickland was suffering from a mental

21  health episode and was probably unable to respond to their commands or directions in a

22  normal or expected manner."  Compl. ¶ 33.

23  ///

24  _____

        [2] Because oral argument would not have been of material assistance, the Court ordered this
25  matter submitted on the briefs.  See E.D. Cal. Local Rule 230(g).

26        [3] The facts alleged are taken from the Complaint, ECF No. 1.

27        [4] Plaintiffs aver that an orange tip signals that a gun is a replica, not a real firearm.  See Compl.
    ¶ 26.  Federal and California laws regulate the manufacture of airsoft guns and require them to include
28  "blaze orange" parts to distinguish them from real firearms.  See 15 U.S.C. § 5001(b)(1); Cal. Penal Code
    § 16700(b)(4)(B).

According to the Complaint, the LEOs formulated a plan to confront Strickland without the assistance of mental health professionals or non-violent de-escalation techniques.  Instead, Plaintiffs aver, the objective was simply to use overwhelming force.  This plan was communicated to Dispatch with sufficient time for Sheriff Moon to have considered its implications prior to the plan's ultimate implementation.

Strickland continued to walk along eastbound on Squirrel Creek Road past Oak Super Market, then southbound on Walker Drive for 10 to 15 minutes with the replica firearm slung over his shoulder.  Plaintiffs allege that there were no reports of Strickland brandishing the gun, threatening anyone, or presenting a threat to public safety.  The aforementioned LEOs confronted Strickland near Walker Drive and Oak Street in the unincorporated area of the County of Nevada, California, surrounding him with patrol vehicles and pointing firearms at him from approximately 30 feet away.

The LEOs commenced to yell commands at Strickland to drop the firearm.  Strickland responded by holding the replica firearm away from his body and telling the officers it was a "B.B. gun."  Strickland purportedly slapped the gun with his hand, demonstrating the sound of plastic instead of metal.  One of the LEOs on scene radioed Dispatch: "He's saying it's a B.B. gun."  Id. ¶ 42.  As the LEOs continued to yell commands to drop the weapon, Strickland pointed to the orange tip on the barrel of the gun to demonstrate that it was a replica, not a real firearm.  One of the LEOs responded that Strickland may have painted that himself, and that the LEOs did not want to kill him.  Plaintiffs allege that Strickland kept the replica firearm pointed at the ground, and he did not threaten anyone during the encounter.

During the encounter, the LEOs formulated a plan to approach Strickland.  Three officers approached Strickland, two armed with rifles and one with a Taser device.  As they advanced, Plaintiffs concede that Strickland "continued to hold the toy gun, sometimes pointing it in the direction of [the LEOs] and at other times pointing it up towards the sky."  Id. ¶ 60.  Hooper discharged his Taser, but it failed to effectively connect with Strickland, rendering it ineffective.  Other officers then fired their weapons

3

1    at Strickland, striking him several times.  He was later taken to a local hospital, where he

2    was pronounced dead.

3           **B.    Previous Medical Treatment**

4           Plaintiffs further allege that the NCSO and Wellpath[5] were fully aware of

5    Strickland's existing mental health issues, as they had provided medical and mental

6    health care to him on several prior occasions when Strickland was in custody at WBCF.

7    In early 2016, doctors at Wellpath diagnosed Strickland with bipolar disorder, PTSD, and

8    anxiety disorder.  Subsequently, Strickland was in the custody of WBCF on at least two

9    other prior occasions, yet NCSO and Wellpath did not provide Strickland with further

10   mental health exams, mental health care, nor refer Strickland to Nevada County's

11   Behavioral Health Department or a third-party mental health provider.

12          On December 26, 2019 (only days before the incident giving rise to the instant

13   matter), Strickland was arrested and taken to WBCF, where he was booked and

14   incarcerated.  NCSO and Wellpath performed a physical and mental illness welfare

15   check and noted that Strickland urgently needed a mental health evaluation.  While in

16   custody from approximately December 26, 2019, to December 28, 2019, NCSO

17   continued to monitor Strickland.  Plaintiffs allege that these Defendants observed

18   unusual conduct and verbal expressions indicating serious active mental health issues,

19   yet they took no further action, such as placing him on an involuntary hold under

20   California's Welfare & Institution's Code §§ 5000 et seq. (notably § 5150).  Strickland

21   was released from custody on or about December 28, 2019.

22

23                                **STANDARD**

24

25          On a motion to dismiss for failure to state a claim under Federal Rule of Civil

26   Procedure ("FRCP") 12(b)(6), all allegations of material fact must be accepted as true

27   _____

28          [5] Wellpath, per Plaintiffs, provided contract medical services to Defendant Nevada County at the
     WBCF at all relevant times to this complaint.  See Compl. ¶ 18.

                                        4

and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotation marks omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and quotation marks omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

### A.    Claims Two, Ten, and Twenty through Twenty-Four (Moon)

Defendant Moon argues that to the extent Plaintiffs' claims (as made in Claims Two, Ten, and Twenty through Twenty-Four, are being pursued against her official capacity as Sheriff, those claims  are redundant and improper.  Plaintiffs have clarified in opposition, however, that these claims are brought against Sheriff Moon only in her individual capacity.  See Opp'n, ECF No. 34, at 2.  Given that concession, Defendant Moon's Motion as to said claims is DENIED as moot.

///

///

///

6

1

**B.     Claims Four and Twelve: <u>Monell</u> (Excessive Force)**

2

**1.     Nevada County**

3

Plaintiffs assert <u>Monell</u> claims against Defendant Nevada County based on

4

inadequate policies, practices, and procedures in interacting with mentally ill or impaired

5

persons; a failure to train and supervise the use of force against such persons; and a

6

failure to investigate deputies who use excessive force.  Defendant insists that Plaintiffs

7

fail to state a claim.

8

Municipalities and local officials cannot be vicariously liable for the conduct of

9

their employees under § 1983, but rather are only "responsible for their own illegal acts."

10

<u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011) (citing <u>Monell v. New York City</u>

11

<u>Department of Social Services</u>, 436 U.S. 658, 665-83 (1978)).  In other words, a

12

municipality may only be liable where it individually caused a constitutional violation via

13

"execution of government's policy or custom, whether by its lawmakers or by those

14

whose edicts or acts may fairly be said to represent official policy."  <u>Monell</u>, 436 U.S. at

15

694.  A local government may be liable for an injury under § 1983 under three possible

16

theories: (1) when execution of official policies or established customs inflict a

17

constitutional injury; (2) when omissions or failures to train amount to a local government

18

policy of "deliberate indifference" to constitutional rights; or (3) when a local government

19

official with final policy-making authority ratifies a subordinate's unconstitutional conduct.

20

<u>See</u> <u>Rodriguez v. Cty. of Los Angeles</u>, 891 F.3d 776, 802-03 (9th Cir. 2018).

21

The Supreme Court has made clear that Plaintiffs may not merely state that a

22

municipal employee wronged them to achieve success on a <u>Monell</u> claim: "Where a

23

plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless

24

has caused an employee to do so, <u>rigorous standards of culpability and causation must</u>

25

<u>be applied</u> to ensure that the municipality is not held liable solely for the actions of its

26

employee."  <u>Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown</u>, 520 U.S. 397, 405 (1997)

27

(emphasis added).  Following <u>Twombly</u> and <u>Iqbal</u>, the Ninth Circuit Court of Appeals held

28

that <u>Monell</u> plaintiffs must provide allegations that are not mere recitations of the

7

1   elements of such a claim, and such facts must plausibly suggest entitlement to relief.  AE

2   ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012); see, e.g.,

3   Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011).

4   As to Plaintiffs' claims here regarding Defendant Nevada County's policies,

5   practices, and procedures, the assertions are vacuous and entirely conclusory.  See

6   Compl. ¶¶ 112-115, 189-192.  Plaintiffs broadly offer that Defendant should have

7   instituted different policies, such as calling a "mental health professional or professional

8   negotiator" to scenes where deputies are dealing with mentally ill individuals.  Id. ¶ 71;

9   see Opp'n, ECF No. 22, at 7.  Plaintiffs are unclear as to how this amounts to a policy at

10   all, and certainly as to how such a policy caused a constitutional injury.  See Connick v.

11   Thompson, 563 U.S. 51, 68 (2011) ("[S]howing merely that additional training would

12   have been helpful in making difficult decisions does not establish municipal liability.");

13   Kollin v. City of Tehachapi, No. 1:18-CV-00617-LJO-JLT, 2018 WL 4057491, at *5 (E.D.

14   Cal. Aug. 24, 2018) (granting a motion to dismiss despite "a grab bag of allegations

15   concerning" the defendant city's policies where "[n]one of the[] allegations [were]

16   supported with facts"); cf. at *5-6 (discussing viable Monell claims).

17   Because Plaintiffs are not arguing the existence of a formal governmental policy,

18   they "must show a longstanding practice or custom which constitutes the standard

19   operating procedure of the local government entity," and the "custom must be so

20   persistent and widespread that it constitutes a permanent and well settled [municipal]

21   policy."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (cleaned up).  They fail to

22   meet this formidable standard.

23   Plaintiffs offer two previous instances of Defendant's deputies "using excessive

24   force against person [sic] with mental disability or substance impairment," both involving

25   the same deputy using force in the county jail.  Compl. ¶¶ 74-75.  One of the incidents

26   resulted in a settlement and the other in criminal charges against the deputy.  See id.

27   Plaintiffs do not allege that the particular officer was involved in this incident, but more

28   generally assert that the NCSO never corrected "the problems exemplified" by these

1  events.  Id. ¶ 76.  These failures, Plaintiffs aver, proximately caused the shooting death

2  of Strickland in the instant matter.  Id. ¶ 78.

3        "Liability for improper custom may not be predicated on isolated or sporadic

4  incidents; it must be founded upon practices of sufficient duration, frequency and

5  consistency that the conduct has become a traditional method of carrying out policy."

6  Trevino, 99 F.3d at 918; see City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24

7  (1985).  Plaintiffs' proffered incidents fail to demonstrate such required duration,

8  frequency, or consistency.  Plaintiffs go on to offer in opposition, without evidence, that

9  some of the unnamed deputies in the aforementioned jail events may be named

10  defendants in this action.  See Opp'n, ECF No. 22, at 9; cf. Hunter v. Cnty. of

11  Sacramento, 652 F.3d 1225, 1233 (9th Cir.2011) ("[A] custom or practice can be inferred

12  from widespread practices or evidence of repeated constitutional violations for which the

13  errant municipal officers were not discharged or reprimanded."); Kidwell-Bertagnolli v.

14  Cty. of Sonoma, No. 20-CV-03291-JSC, 2020 WL 4901197, at *6 (N.D. Cal. Aug. 20,

15  2020) (finding it compelling that involved officers had "failed exams" on "how to handle

16  persons with mental health problems," in addition to a history of custodial suicides).

17  Such unsupported allegations do not save the claim.

18        Finally, Plaintiffs are correct that the Supreme Court has found that a single

19  occurrence could demonstrate a municipality's deliberate indifference to constitutional

20  violations.  See Opp'n, ECF No. 22, at 9-10; City of Canton, Ohio v. Harris, 489 U.S.

21  378, 390 (1989); but see Connick, 563 U.S. at 67 ("The Canton hypothetical assumes

22  that the armed police officers have no knowledge at all of the constitutional limits on the

23  use of deadly force.").  However, despite Plaintiffs' assertions that the constitutional

24  violations here were "so obvious," repeated proclamations do not make something true.

25  Nor do unenlightened analogies, such as comparing this officer-involved shooting —

26  which involved a prolonged stand-off, multiple ignored verbal commands, and the

27  attempted use of a less-lethal device — to "taking out a terrorist in Iraq."  See Opp'n,

28  ECF No. 22, at 8.

For the reasons stated above as to lack of support, Plaintiffs' claims as related to a failure to train and ratification likewise fail.  Plaintiffs' Fourth and Twelfth Claims as to Defendant Nevada County are DISMISSED with leave to amend.

### 2.    Grass Valley

Plaintiffs also assert <u>Monell</u> claims against Defendant Grass Valley based on inadequate policies, practices, and procedures in interacting with mentally ill or impaired persons; a failure to train and supervise the use of force against such persons; and a failure to investigate officers who use excessive force.  Defendant avers that Plaintiffs fail to plead an underlying constitutional violation or, in the alternative, Plaintiffs fail to state a claim.  "<u>Monell</u> claims . . . require a plaintiff to show an underlying constitutional violation."  <u>Lockett</u>, 977 F.3d at 741.

Plaintiffs assert that Defendant Grass Valley and its officers violated the constitutional rights of Strickland in the course of this officer-involved shooting.  Law enforcement use of force is analyzed under the Fourth Amendment's objective reasonableness standard.  <u>Graham v. Connor</u>, 490 U.S. 386, 395, 397 (1989); <u>see</u> <u>Scott v. Harris</u>, 550 U.S. 372, 383 (2007) (holding that this analysis does not change for deadly force).  The facts and circumstances of each case will consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  <u>Graham</u>, 490 U.S. at 396.  While these factors are not exhaustive, the most important "is whether the suspect posed an immediate threat."  <u>Zion v. Cty. of Orange</u>, 874 F.3d 1072, 1075 (9th Cir. 2017).  The Supreme Court has consistently reminded lower courts that this analysis "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  <u>Graham</u>, 490 U.S. at 396.  "An officer's use of deadly force is reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."  <u>Scott v. Henrich</u>, 39 F.3d 912, 914 (9th Cir. 1994) (citing <u>Tennessee v. Garner</u>, 471 U.S. 1, 3 (1985)) (cleaned up).

10

1    The fact that a suspect is armed with a weapon does not render an officer's use of

2 deadly force "per se reasonable under the Fourth Amendment." George v. Morris,

3 736 F.3d 829, 838 (9th Cir. 2013).  However, when "an individual points his gun in the

4 officer's direction, the Constitution undoubtedly entitles the officer to respond with deadly

5 force." Id. (cleaned up); see also Long v. City & Cnty. of Honolulu, 511 F.3d 901, 906

6 (9th Cir. 2007).  Here, Plaintiffs cannot escape the fact that "Strickland continued to hold

7 the toy gun, sometimes pointing it in the direction of Defendants . . . ." Compl. ¶ 60

8 (emphasis added).

9    That the firearm turned out to be a replica is irrelevant.  See, e.g., Penley v.

10 Eslinger, 605 F.3d 843, 851-54 (11th Cir. 2010).[6]  Plaintiffs' repeated use of the

11 nomenclature "toy gun" does not change this fact.  This analysis — "the critical inquiry"

12 — considers only the officers' perspective at the time of the shooting.  See Wilkinson v.

13 Torres, 610 F.3d 546, 551 (9th Cir. 2010).  Officers contemporaneously explained to

14 Strickland that despite his assurances, they did not know that the replica he was holding

15 was a "fake gun." Compl. ¶ 43.  As with all the facts presented, the Court must consider

16 the totality of circumstances — this may include the sound of plastic emanating from the

17 firearm,[7] the decedent's own promises that the gun was fake, and the presence of

18 orange coloring.  While an orange tip is a factor judges may ask officers to weigh in their

19 split-second decision to use deadly force,[8] the Court here won't demand that they bet

20 their lives on it.

21 ///

22

23    [6] This case is clearly distinguishable from Est. of Lopez by & through Lopez v. Gelhaus, 871 F.3d 998 (9th Cir. 2017).  There, officers were not responding to a call, but rather self-initiated the stop; the decedent was clearly a minor; at least one officer believed the gun may be a toy; the firearm was never pointed at officers; the decedent was not aware of the officers until only moments before the shooting; officers did not warn that they would use deadly force; and officers did not attempt to use less intrusive force.  See id. at 1010-11.  Cases cited in support by that court shared the theme that the shooting victims were not actively presenting a threat.  See id. at 1011.

24

25

26    [7] Though this is not a particularly compelling distinction as many real firearms have plastic parts.

27    [8] See Graham, 490 U.S. at 396-97 ("[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

28

1    Finally, Plaintiffs are correct that Strickland's mental health is a factor that must be

2    considered under a reasonableness analysis.  See Deorle v. Rutherford, 272 F.3d 1272,

3    1282-83 (9th Cir. 2001).  However, there is no "per se rule" that mentally ill persons must

4    be afforded different treatment than armed criminals.  See id. at 1283.  Despite the

5    likelihood of Strickland's ongoing mental disturbance, it was "not objectively

6    unreasonable" for officers to consider the presence of a deadly weapon a priority.  See

7    Blanford v. Sacramento Cty., 406 F.3d 1110, 1117-18 (9th Cir. 2005) (finding the use of

8    deadly force against a mentally disturbed individual armed with a sword objectively

9    reasonable).  That Strickland may have been struggling with mental health issues made

10   the rifle he was carrying no less deadly in the objectively reasonable perspective of

11   Defendants.  See Elifritz v. Fender, 460 F. Supp. 3d 1088, 1114 (D. Or. 2020) (holding

12   that the decedent "posed an immediate threat of serious injury or death to the officers,

13   and it was reasonable for the officers to respond with deadly force, even if [the decedent]

14   was experiencing a mental health crisis.").[9]

15   Because Plaintiffs have not demonstrated a constitutional violation based on

16   Defendants' use of deadly force, a Monell claim is foreclosed.  Accordingly, Plaintiffs'

17   fifth cause of action against Defendant Grass Valleys DISMISSED with leave to amend.

18   Because Claim Thirteen is duplicative of Claim Five, it is likewise DISMISSED as to

19   Grass Valley with leave to amend.

20       **C.    Claims One, Three, Nine, and Eleven (Gammelgard, Hooper, Grube,
             and Ball)**

21

22   As the Court has already recognized above, Defendant Hooper's use of deadly

23   force was constitutionally reasonable on the basis of the allegations made in Plaintiffs'

24   Complaint.  Allegations of a failure to intercede by Defendants Grube and Ball (who, like

25   Hooper, were also Grass Valley police officers) to stop Hooper's conduct therefore also

26   ───────────────
     [9] Consideration of other enumerated Graham factors support Defendants.  See Graham, 490 U.S.
27   at 396.  Defendants had probable cause to believe that Strickland engaged in a serious crime by pointing
     what appeared to be a real firearm at them.  See Cal. Penal Code § 245(a)(1-2) (assault with a deadly
     weapon); id. § 417 (brandishing).  Strickland actively resisted officers' repeated commands to drop the
28   weapon.

1   fail given the lack of any predicate constitutional injury.  Accordingly, Claim One is

2   DISMISSED as against Grube and Hall with leave to amend.  By this same reasoning,

3   Claim Three against Defendant Gammelgard (who was not present at the scene of the

4   incident and has been named only as Chief of the Grass Valley Police Department

5   responsible for his subordinates) is DISMISSED with leave to amend, as well.[10]  Finally,

6   because Claims Nine and Eleven are premised on these same facts under the

7   Fourteenth Amendment, those claims likewise fail and are DISMISSED with leave to

8   amend.

9          D.      **Claims Six and Fourteen: Deliberate and Callous Disregard of Inmate
                   Medical Needs (McCormack)**
10

11          Plaintiffs appears to allege that Deputy McCormack exhibited a callous disregard

12   of Strickland's medical needs while incarcerated at WBCF shortly before the incident in

13   which Strickland was killed, and charge McCormack in the Sixth and Fourteenth Claims

14   with § 1983 violations on that basis.   The Complaint's underlying factuall assertions,

15   however (specifically at  ¶¶ 27-31 completely devoid of any mention of McCormack.

16   Accordingly, the Complaint is strictly conclusory as to any wrongdoing by McCormack.

17   Thus, Claims Six and Fourteen, as related to Defendant McCormack, are DISMISSED

18   with leave to amend.

19          E.      **Claims Seven and Fifteen: <u>Monell</u> (Inmate Medical Needs; Nevada
                   County)**
20

21          Plaintiffs next assert <u>Monell</u> claims against Defendant Nevada County for a

22   deliberate and callous disregard of inmate medical needs by individuals other than

23   McCormack.  Similar to the above claims, Plaintiffs plead inadequate policies, practices,

24   and procedures; a failure to train; and a failure to investigate.  Nevada County again

25   calls these allegations "conclusory" and argues that Plaintiffs have failed to specifically

26   identify deficient or absent policies.  <u>See</u> Mot., ECF No. 14, at 11-12.

27   _____

28          [10] There is no need to address Defendants' alternate argument that they were entitled to qualified
     immunity under the Court's analysis, and it declines to do so.

1    While Nevada County's  argument here is nearly identical to their <u>Monell</u> defense

2    against Claims Four and Twelve, the Court is not equally convinced.  Nevada County

3    argues that Plaintiffs do not identify policies, customs, or practices, but in fact the

4    Complaint specifically lists inadequate policies regarding inmate medical care.  <u>See</u>

5    Compl. ¶¶ 146-149.  While Plaintiffs do not flawlessly describe the contours of these

6    policies or customs,[11] they are not obligated to do so at this stage.  <u>See</u> <u>Est. of Osuna v.</u>

7    <u>Cty. of Stanislaus</u>, 392 F. Supp. 3d 1162, 1174-75. (E.D. Cal. 2019).  Instead, they

8    allege the policies in general terms and plausibly link them to potential constitutional

9    violations (<u>see</u> <u>id.</u> at 1175) — i.e., a failure to provide constitutionally required medical

10   care to inmates.  <u>See, e.g.</u>, <u>Coleman v. Newsom</u>, 455 F. Supp. 3d 926, 929 (E.D. Cal.

11   2020).

12   Accordingly, Defendant Nevada County's Motion to Dismiss Claims Seven and

13   Fifteen is DENIED.

14   **F.    Claims Seventeen and Eighteen: Rehabilitation Act and Americans with Disabilities Act (Nevada City and Grass Valley)**

15

16   Plaintiffs and Defendants concur that the Americans with Disabilities Act,

17   42 U.S.C. §§ 12101, <u>et seq.</u> ("ADA") and the Rehabilitation Act, 29 U.S.C. §§ 701,

18   <u>et seq.</u> provide identical remedies, procedures, and rights, and are analyzed under the

19   same legal framework.  Mot., ECF No. 16, at 11; Opp'n, ECF No. 29, at 16; <u>see</u> <u>Vos v.</u>

20   <u>City of Newport Beach</u>, 892 F3d 1024, 1036 (9th Cir. 2018).  "Title VII of the ADA

21   prohibits a public entity from discriminating against any qualified individual with a

22   disability.  Title VII applies to arrests." <u>Id.</u> (cleaned up).  The same fact evaluation

23   applies to an accommodation analysis as to a Fourth Amendment reasonableness

24   determination.  <u>Id.</u> at 1037.

25   Here, Strickland's gun was ultimately a replica, inherently unable to present a

26   serious public safety threat.  As such, it may be tempting in retrospect to find that there

27

28   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [11] Plaintiffs' citation (Compl. ¶¶ 74-75) to NCSO deputies allegedly "attacking" inmates who happened to have mental disabilities is inapposite to the instant allegations on the facts provided.

1   should have been ample time to secure the scene, employ accommodations, call on

2   specialized help, or — to invoke a favorite yet amorphous catch-all — "de-escalate" the

3   situation.  Cf. id.  However, the officers on scene here had no such luxury.  From their

4   reasonable perspective, Strickland was armed with a rifle not only capable of instantly

5   killing them, but of firing projectiles with the ability to cause extensive harm at substantial

6   distances.  There is no plausible manner in which officers can "surround" such a suspect

7   to adequately mitigate risk to themselves or the public.  Cf. id. at 1033 (armed with

8   scissors); Longoria v. Pinal Cty., 873 F.3d 699, 705 (9th Cir. 2017) (unarmed).  Every

9   moment spent not engaging such a suspect is a moment in which officers risk deadly

10   consequences to themselves and to the public at large.

11          These pressing facts must weigh into the reasonableness determination of

12   Plaintiffs' ADA and Rehabilitation Act claims.  See Sheehan v. City & Cty. of San

13   Francisco, 743 F.3d 1211, 1232 (9th Cir. 2014) (collecting cases and affirming the

14   proposition that "exigent circumstances inform the reasonableness analysis under the

15   ADA"); Harper v. Cty. of Merced, No. 1:18-CV-00562-LJO-SKO, 2018 WL 5880786, at *7

16   (E.D. Cal. Nov. 8, 2018) (collecting cases to find that where "exigent circumstances were

17   present, courts have rejected ADA reasonable accommodation claims as a matter of

18   law").  As indicated above, given the allegations of the Complaint as it currently stands,

19   the Court finds that officers acted reasonably in employing deadly force.[12]

20          Accordingly, Claims Seventeen and Eighteen as against Defendants Grass Valley

21   and Nevada County[13] are DISMISSED with leave to amend.

22   ///

23   ///

24   ///

25   ///

26          [12] To reach the same conclusion, the Court also finds that because Strickland represented himself
     as a "direct threat," Defendants were not required to provide accommodation.  See 28 C.F.R. § 35.139.

27

28          [13] As indicated above, Defendant Nevada County filed a joinder (ECF No. 21) to Grass Valley's
     Motion to Dismiss Plaintiffs' claims for ADA and Rehabilitation Act violations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**G.      Claim Twenty: Excessive Force (California Constitution)**

**1.      Defendant Nevada County; Defendants Moon, King, Tripp, and McCormack**

Plaintiffs' Twentieth Claim alleges unreasonable and excessive force under the California Constitution, Article I, §§ 1, 7, and 13.  Defendants Nevada County, Moon, King, Tripp, and McCormack aver that Sections 1 and 7 do not provide for private causes of action, and thus require dismissal.  Plaintiffs "have no objection to removing the references to Section 1 & 7."  Opp'n, ECF No. 22, at 18.

Defendant Nevada County only addresses the Section 13 claim in their Reply.[14] See ECF No. 26, at 8-9.  As Plaintiffs did not have the opportunity to respond, the Court will not consider the argument at this juncture.  See <u>Zamani v. Carnes</u>, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

Accordingly, Claim Twenty, as it relates to these Defendants and insofar as it is premised on the California Constitution, Article I, §§ 1 and 7, is DISMISSED with leave to amend.  As to any claim proceeding under § 13, however, Defendants' Motion to Dismiss is DENIED.

**2.      Defendant Grass Valley; Defendants Gammelgard, Hooper, Grube, and Ball**

As stated above, Plaintiffs' Twentieth Claim alleges unreasonable and excessive force under the California Constitution, Article I, §§ 1, 7, and 13.  Defendants Grass Valley, Gammelgard, Hooper, Grube and Ball aver that because the use of deadly

///

///

///

///

---

[14] Defendant Nevada County does not address Section 13 in their Motion.  Instead, Defendant asserts that Section 3 also does not provide a private cause of action, which is irrelevant in the absence of any charging allegations which implicate that section.

16

1  force was reasonable, there can be no basis for state constitutional claim.  The Court

2  agrees.[15]

3      Accordingly, Claim Twenty, as it applies to these Defendants, is DISMISSED with

4  leave to amend.

5      **H.    Claims Twenty-One through Twenty-Four: Causes of Action Under**
       **State Law**
6
7          **1.    Defendant Nevada County**

8      Defendant Nevada County asserts that Plaintiffs fail to state a claim for <u>direct</u>

9  <u>liability</u> against Nevada County under California law in Claims Twenty-One (Bane Act);

10  Twenty-Two (assault/battery); Twenty-Three (negligence); and Twenty-Four (wrongful

11  death).  Nevada County does not dispute that Plaintiffs have sufficiently alleged these

12  claims for vicarious liability (Mot., ECF No. 14, at 15-16), and Plaintiffs confirm that these

13  causes of action solely assert claims on that basis. Opp'n, ECF No. 22, at 19.

14      To the extent that any of the above enumerated claims  are based on direct

15  liability, they are accordingly DISMISSED with leave to amend.  However, this Order

16  does not impact Plaintiffs' ability to proceed on these claims against Defendant Nevada

17  County under the theory of <u>vicarious liability</u>.

18          **2.    Defendants Moon, King, Tripp, and McCormack**

19      Defendants Moon, King, Tripp, and McCormack next seek to dismiss Claim

20  Twenty-One of the Complaint, which alleges violation of the Bane Act, Cal. Civ. Code

21  § 52.1.  "The elements of a cause of action under the Bane Act are: (1) defendants

22

23          [15] In the alternative, Defendants argue that these sections of the California Constitution do not
allow for private causes of action.  Plaintiffs "have no objection to removing the references to Sections 1 &
24  7," but do seek to move forward with their section 13 claims.  Opp'n, ECF No. 44, at 19.  "There is a split
among federal district courts on whether § 13 confers an action for money damages."  <u>Dolores</u>
25  <u>Velasquez v. Cty. of San Bernardino</u>, No. EDCV 17-2344 JGB (SHKx), 2018 WL 6061204, at *2 (C.D. Cal.
Mar. 1, 2018) (collecting cases and ultimately finding that monetary damages are allowed under the
26  section).  Even courts in this jurisdiction are split on the question.  <u>Compare</u> <u>Maric v. Alvarado</u>, No. 1:12-
CV-00102-SKO, 2020 WL 949938, at *6 (E.D. Cal. Feb. 27, 2020) (allowing); <u>Risse v. Porter</u>, No. 2:19-
27  CV-00624-TLN-AC, 2020 WL 1433144, at *8 (E.D. Cal. Mar. 24, 2020) (denying).  While the Court finds
compelling the conclusions of <u>Dolores Velasquez</u>, it does not need to settle this conflict here.  <u>See</u> <u>Dolores</u>
28  <u>Velasquez</u>, 2018 WL 6061204, at *2 (discussing <u>Katzberg v. Regents of Univ. of California</u>, 29 Cal. 4th
300, 303 (2002)).

1  interfered by threat, intimidation, or coercion, or attempted to interfere . . . ; (2) with the

2  exercise or enjoyment by any individual of rights secured by federal or state law."

3  Ordonez v. Stanley, 495 F. Supp. 3d 855, 865-66 (C.D. Cal. 2020) (citing King v. State of

4  Cal., 242 Cal. App. 4th 265, 294 (2015)).  "Plaintiff must allege defendants had a specific

5  intent to violate the rights of plaintiff."  Id. at 866 (citing Reese v. Cty. of Sacramento,

6  888 F.3d 1030, 1043 (9th Cir. 2018)).

7       As discussed above, the subject officers employed objectively reasonable force

8  given the allegations of the Complaint as it now stands.  Consequently, the twenty-first

9  cause of action cannot survive and is accordingly DISMISSED with leave to amend.

10  Employing the same reasoning, the Twenty-Second Claim for assault and battery is

11  likewise defective and is DISMISSED with leave to amend, as well.

12            **3.    Defendant Grass Valley**

13       Defendant Grass Valley also seeks to dismiss Claim Twenty-One of the

14  Complaint, which alleges violation of the Bane Act, Cal. Civ. Code § 52.1.  Again,

15  because this Court finds that the allegations as currently pled show that the officers

16  employed objectively reasonable force, this claim cannot survive.  The twenty-first cause

17  of action is thus DISMISSED as against Grass Valley with leave to amend.

18       Defendant Grass Valley further seeks dismissal of Claim Twenty-Three, which

19  alleges negligence.  "To establish negligence, a party must prove the following: (a) a

20  legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the

21  proximate or legal cause of the resulting injury."  Hernandez v. City of San Jose,

22  14 Cal. App. 4th 129, 133 (1993) (cleaned up).  The California Supreme Court "has long

23  recognized that peace officers have a duty to act reasonably when using deadly force.

24  The reasonableness of an officer's conduct is determined in light of the totality of

25  circumstances."  Hayes v. Cty. of San Diego, 57 Cal. 4th 622, 629 (2013) (cleaned up).

26  An "officer's duty to act reasonably when using deadly force extends to preshooting

27  conduct."  Hayes v. Cty. of San Diego, 736 F.3d 1223, 1236 (9th Cir. 2013) (cleaned up).

28  California negligence law is broader than federal Fourth Amendment law in analyzing

1    reasonableness.  C.V. ex rel. Villegas v. City of Anaheim, 823 F.3d 1252, 1257 n.6

2    (9th Cir. 2016); see Vos, 892 F.3d at 1037-38.

3         Plaintiffs attack the pre-shooting behavior of Defendants in, inter alia, failing to call

4    upon mental health experts during the call.  This Court is extremely hesitant to second-

5    guess the decisions of the officers in the instant matter.  See Ryburn v. Huff, 565 U.S.

6    469, 477 (2012) ("[J]udges should be cautious about second-guessing a police officer's

7    assessment, made on the scene, of the danger presented by a particular situation.");

8    Graham, 490 U.S. at 396-97.  While Plaintiffs aver that there "was no urgency to the

9    situation" (Compl. ¶ 51), their own facts challenge this assertion.  In the objectively

10   reasonable view of the present officers, the decedent was in public, armed with a long

11   gun, and not responding to commands.  It would hardly be difficult to imagine

12   accusations of "negligence" levied against officers who did not treat such a situation as

13   urgent.  Moreover, any "Monday morning quarterbacking" from Plaintiffs is based on

14   pure conjecture — e.g., speculation that a mental health specialist would have been able

15   to (1) promptly dispatch to the scene; (2) be present on scene based on safety

16   considerations; and (3) peacefully diffuse a situation that numerous officers could not

17   despite repeated pleadings.  This is distinguishable from successful allegations of

18   negligence where officers acted unreasonably, leading to tragic results.  See, e.g.,

19   Mendez v. Cty. of Los Angeles, 897 F.3d 1067, 1082-83 (9th Cir. 2018).

20        Accordingly, Claim Twenty-Three as against Grass Valley is DISMISSED with

21   leave to amend.

22              **4.    Defendants Gammelgard, Hooper, Grube, and Ball**

23        These Defendants also seek to dismiss Claim Twenty-One of the Complaint,

24   which alleges violation of the Bane Act, Cal. Civ. Code § 52.1.  As indicated above,

25   because this Court has separately found — given the allegations in Plaintiffs' current

26   Complaint — that the officers employed objectively reasonable force, this claim cannot

27   survive.  The twenty-first cause of action is thus DISMISSED with leave to amend.

28   ///

1    Employing the same reasoning, the Twenty-Second Claim for assault and battery cannot

2    survive, and is thus DISMISSED with leave to amend.

3          This Court above dismissed a claim of negligence against Defendant Grass

4    Valley, nevertheless recognizing that California negligence law is broader than federal

5    Fourth Amendment law in analyzing reasonableness.  See C.V. ex rel. Villegas,

6    823 F.3d at 1257 n.6.

7          Exercising this same reasoning here, Claim Twenty-Three is DISMISSED with

8    leave to amend as against Grass Valley law enforcement personnel Gammelgard,

9    Hooper, Grube and Ball.

10

11                                          **CONCLUSION**

12

13      **1.    Nevada County**

14        Defendant Nevada County's Motion to Dismiss (ECF No. 14) is GRANTED in

15    part and DENIED in part[16] as follows:

16    •    Nevada County's Motion to Dismiss is DENIED as to the following claims:

17          Claims Seven and Fifteen (under Monell); Claim Twenty (insofar as it is

18          premised on the California Constitution, Article I, § 13).

19    •    Defendants' Motion to Dismiss is GRANTED as to the following claims: Claims

20          Four and Twelve (under Monell); Claims Seventeen and Eighteen (asserting

21          ADA and Rehabilitation Act violations, respectively); Claim Twenty (insofar as

22

23          [16] Plaintiffs have requested that the Court take judicial notice of three videos: (1) the NCSO/GVPD shooting of Gabriel Strickland ("Strickland video") on January 1, 2020, giving rise to the instant action;

24    (2) a separate NCSO shooting of Sage Crawford ("Crawford video") on February 4, 2021; (3) a separate video of NCSO and GVPD personnel using force against Christopher Howie on January 11, 2018. Defendants do not challenge judicial notice of the Strickland video (1), which is GRANTED.  See Fed. R.

25    Evid. 201(b).  However, Defendants challenge judicial notice of the Crawford video (2) because it was not referenced in the Complaint, and it is reasonably disputed.  Reply at 4.  Defendants challenge judicial

26    notice of (3) as reasonably disputed and unrelated to the instant matter.  Reply at 2-3.  Because videos (2) and (3) are reasonably disputed as to what they establish, they are not appropriate for judicial notice at

27    this time, and the request is DENIED.  See Sanz v. City of Vallejo, No. 2:19-CV-02134-TLN-DB, 2021 WL 2682162, at *3 (E.D. Cal. June 30, 2021); Strojnik v. Azul Hospitality Grp., No. 2:19-CV-01877-TLN-AC

28    (PS), 2019 WL 6467494, at *2 (E.D. Cal. Dec. 2, 2019).

1         it is premised on the California Constitution, Article I, §§ 1 and 7); Claims

2         Twenty-One through Twenty-Four (to the extent of direct liability only).  These

3         claims are DISMISSED WITH LEAVE TO AMEND.

4       **2.**     **Grass Valley**

5       Defendant Grass Valley's Motion to Dismiss (ECF No. 16) is GRANTED[17] as

6   follows:

7       •   Grass Valley's Motion to Dismiss is GRANTED as to the following claims: Five

8         and Thirteen (under <u>Monell</u>); Seventeen and Eighteen (ADA and Rehabilitation

9         Act claims, respectively); Twenty (California Constitution, Article I, §§ 1 and

10         7)); Twenty-One (Bane Act); Twenty-Three (Negligence).  These claims are

11         DISMISSED WITH LEAVE TO AMEND.

12       **3.**     **Moon, King, Tripp, and McCormack**

13       The Motion to Dismiss (ECF No. 27) brought on behalf of Defendants Moon,

14   King, Tripp, and McCormack  is GRANTED as follows:

15       •   Defendants' Motion to Dismiss is GRANTED as to the following claims: Six

16         and Fourteen (deliberate and callous disregard); Twenty (excessive force; as

17         to California Constitution, Article I, §§ 1 and 7); Twenty-One (Bane Act);

18         Twenty-Two (Assault and Battery).  These claims are DISMISSED WITH

19         LEAVE TO AMEND.

20       **4.**     **Gammelgard, Hooper, Grube, and Ball**

21       Defendants Gammelgard, Hooper, Grube and Ball's Motion to Dismiss (ECF No.

22   30) is also GRANTED as follows:

23       •   Defendants' Motion to Dismiss is GRANTED as to the following claims: One,

24         Three, Nine, and Eleven (Excessive Force); Twenty (California Constitution,

25         Article I, §§ 1 and 7); Twenty-One (Bane Act); Twenty-Two (Assault and

26

27           [17] Plaintiffs have requested that the Court take judicial notice of The California Commission on Peace Officer Standards and Training Manual on De-Escalation Strategies & Techniques ("POST Manual").  ECF No. 29-1.  Defendants do not challenge judicial notice of this document, which is

28   GRANTED.  <u>See</u> Fed. R. Evid. 201(b).

1  Battery); Twenty-Three (Negligence).  These claims are DISMISSED WITH

2  LEAVE TO AMEND.

3       Should Plaintiffs wish to file an amended complaint, they are directed to do so not

4  later than twenty (20) days after the date this Memorandum and Order is electronically

5  filed.  Failure to do so will result in the dismissal, with prejudice, of those claims for which

6  amendment had been permitted without further notice to the parties.

7       IT IS SO ORDERED.

8  Dated:  September 28, 2021

9

10  MORRISON C. ENGLAND, JR.
    SENIOR UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22