UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GABRIEL STRICKLAND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NEVADA COUNTY, et al.,<br><br>Defendants. | No. 2:21-cv-00175-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Through this action, the Estate of Gabriel Strickland, N.S., and Shawna Alexander ("Plaintiffs") seek to recover damages, in part, from two sets of Defendants: (1) the City of Grass Valley, Chief Alex Gammelgard ("Gammelgard"), Officer Brian Hooper ("Hooper"), Officer Dennis Grube ("Grube"), and Officer Conrad Ball ("Ball") (collectively, "City Defendants"); and (2) Nevada County, Sheriff Shannon Moon ("Sheriff Moon"), Deputy Taylor King ("King"), Deputy Brandon Tripp ("Tripp"), and Officer Joseph McCormack ("McCormack") (collectively, "County Defendants" and with City Defendants, "Defendants").[1] See First Am. Compl., ECF No. 59 ("FAC"). Plaintiffs' FAC alleges 25 causes of action under federal and state law. Presently before the Court is City Defendants' Motion to Dismiss Plaintiffs' FAC. ECF No. 60. County Defendants have

---

[1] Plaintiffs also bring suit against Wellpath Management, Inc. ("Wellpath"), Brent Weldemere, and Richard Donofrio. These parties have elected to file an answer to the First Amended Complaint. ECF No. 64.

joined City Defendants in the arguments and relief requested for Claims One, Two, Four, Nine, Ten, Twelve, Seventeen, Eighteen, Twenty, Twenty-One, Twenty-Two, Twenty-Three, and Twenty-Four. ECF No. 62. For the reasons set forth below, City Defendants' Motion and County Defendants' Joinder are GRANTED.[2]

## BACKGROUND[3]

### A.    Officer-Involved Shooting

On January 1, 2020, at approximately 12:46 p.m., Nevada County Region Dispatch ("Dispatch") received reports that a man was walking on Squirrel Creek Road with "what appeared to be a shotgun," but he did not appear to be upset. The man was 25-year-old Gabriel Strickland ("Strickland"), and he was carrying a black toy airsoft rifle with an orange tip on the barrel.[4] Responding to the call, two deputies from the Nevada County Sheriff's Office ("NCSO") (King and Tripp) met with officers (Hooper, Grube, and Ball) from the Grass Valley Police Department ("GVPD") near the intersection of Squirrel Creek Road and Rough & Ready Highway. Plaintiffs allege that these law enforcement officers ("LEOs") knew that Strickland was a homeless man with mental health issues and that he had been released from custody of the local county jail (Wayne Brown Correctional Facility, "WBCF") a day or two before. According to the FAC, the LEOs consequently knew that it was likely Strickland was suffering from a mental health episode and would also likely not respond to their commands or directions in a normal or expected manner.

///

---

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Local Rule 230(g).

[3] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' FAC.

[4] Plaintiffs aver that an orange tip signals that a gun is a replica, not a real firearm. See FAC ¶ 26. Federal and California laws regulate the manufacture of airsoft guns and require them to include "blaze orange" parts to distinguish them from real firearms. See 15 U.S.C. § 5001(b)(1); Cal. Penal Code § 16700(b)(4)(B).

The LEOs allegedly formulated a plan to confront Strickland without the assistance of mental health professionals or non-violent de-escalation techniques. Instead, Plaintiffs aver, the objective was simply to use overwhelming force. This plan was communicated to Dispatch with sufficient time for Sheriff Moon to have considered its implications prior to the plan's ultimate implementation.

Strickland continued to walk unaccompanied eastbound on Squirrel Creek Road past Oak Super Market, and then southbound on Walker Drive for 10 to 15 minutes with the toy gun slung over his shoulder. Plaintiffs allege that Strickland never brandished the toy gun, threatened anyone, trespassed onto private property, or acted in any manner that was a threat to public safety.[5] The aforementioned LEOs confronted Strickland near Walker Drive and Oak Street in the unincorporated area of Nevada County, just on the border with the City of Grass Valley, surrounding him with patrol vehicles, exiting those vehicles, and drawing their firearms at him from a close range.

The LEOs commenced to yell commands at Strickland to drop the firearm. Strickland responded by holding the toy gun away from his body and telling the officers it was a "B.B. gun." Strickland purportedly slapped the gun with his hand, demonstrating the sound of plastic instead of metal. One of the LEOs on scene radioed Dispatch: "He's saying it's a B.B. gun." As the LEOs continued to yell commands to drop the weapon, Strickland pointed to the orange tip on the barrel of the gun to demonstrate that it was a toy gun, not a real firearm. Tripp responded that Strickland may have painted that himself, and that the LEOs did not want to kill him. Plaintiffs allege that Strickland kept the toy gun barrel pointed at the ground as he spoke to the LEOs.

Plaintiffs allege that Tripp initiated an assault and told the other LEOs to cover him. Tripp, Hooper, and Ball approached Strickland, with Tripp and Ball armed with assault weapons and Hooper with a Taser device. Anticipating that the LEOs' escalation

---

[5] According to the FAC, the following facts are based on quotations "taken from a video of the events prepared by Defendants Nevada County and City of Grass Valley that was published online." FAC ¶ 68 ("Although every effort has been made to accurately quote the voices in the video, there may be some correction to these quotes after a forensic examination of the original video and audio materials and the testimony of the individual officers.").

3

and confrontation would necessitate the use of deadly force, Tripp told Dispatch, "Tell Grass Valley units to get out of cross-fire!" As they advanced, Strickland dropped to his knees, but Plaintiffs concede that Strickland continued to hold the toy gun, sometimes pointing it in the direction of the LEOs and at other times pointing it up towards the sky. Hooper attempted to employ his Taser, but it failed to effectively connect with Strickland's clothing, rendering it ineffective. King, Tripp, and Hooper then fired their weapons at Strickland, striking him several times. He was later taken to a local hospital, where he was pronounced dead.

### B.     Previous Medical Treatment

Plaintiffs further allege that the NCSO and Wellpath[6] were fully aware of Strickland's existing mental health issues, as they had provided medical and mental health care to him on several prior occasions when Strickland was in custody at WBCF. In early 2016, a doctor at Wellpath diagnosed Strickland with bipolar disorder, post-traumatic stress disorder, and anxiety disorder. Subsequently, Strickland was in the custody of WBCF on at least two other prior occasions, yet NCSO and Wellpath did not provide Strickland with further mental health examinations or mental health care.

On December 26, 2019 (only days before the incident giving rise to the instant matter), Strickland was arrested and taken to WBCF, where he was booked and incarcerated. NCSO and Wellpath performed a physical and mental intake wellness check and noted that Strickland urgently needed a mental health evaluation. While in custody from approximately December 26 to 30, 2019, NCSO and Wellpath continued to monitor Strickland. Plaintiffs allege that these Defendants observed unusual conduct and verbal expressions indicating serious active mental health issues, yet they took no further action, such as referring him to Nevada County's Behavioral Health Department or a third-party mental health provider or placing him on an involuntary hold under

///

---

[6] Wellpath, per Plaintiffs, provided contract medical services to Nevada County at the WBCF at all relevant times alleged in the FAC. See FAC ¶ 18.

4

California's Welfare and Institutions Code §§ 500 et seq. (notably § 5150). Strickland was released from custody on or about December 30, 2019.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[7] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of

---

[7] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

1  the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &
2  Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to
3  relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their
4  claims across the line from conceivable to plausible, their complaint must be dismissed."
5  Id.  However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that
6  actual proof of those facts is improbable, and 'that a recovery is very remote and
7  unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

8        A court granting a motion to dismiss a complaint must then decide whether to
9  grant leave to amend.  Leave to amend should be "freely given" where there is no
10 "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
11 to the opposing party by virtue of allowance of the amendment, [or] futility of [the]
12 amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
13 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
14 be considered when deciding whether to grant leave to amend).  Not all of these factors
15 merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .
16 carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
17 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
18 "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest
19 Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d
20 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160
21 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . .
22 constitutes an exercise in futility . . . .")).

23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**ANALYSIS**

### A. Claims One through Five: Excessive Force in Violation of the Fourth Amendment and Monell Liability[8]

Plaintiffs' first five claims are premised on the use of excessive force in violation of the Fourth Amendment. In its prior Order, the Court found that Plaintiffs' allegations in the original Complaint did not demonstrate a constitutional violation based on the officers' use of deadly force. See ECF No. 58, at 10–13.

Like the original Complaint, the FAC alleges that "Strickland continued to hold the toy gun, sometimes pointing it in the direction of" Tripp, Hooper, and Ball. FAC ¶ 84 (emphasis added). "When an individual points his gun 'in the officer's direction,' the Constitution undoubtedly entitles the officer to respond with deadly force." George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013) (citing Long v. City & Cnty. of Honolulu, 511 F.3d 901, 906 (9th Cir. 2007)). Plaintiffs continue to assert that Strickland was carrying a toy gun, see, e.g., FAC ¶¶ 26, 70, 74, but whether the firearm was real or a replica is irrelevant in terms of the officers' perspective at the time of the shooting. See ECF No. 58, at 11 (citing Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010)). Finally, while Strickland's mental health is a factor, "it was 'not objectively unreasonable' for officers to consider the presence of a deadly weapon a priority." ECF No. 58, at 12 (citing Blanford v. Sacramento Cnty., 406 F.3d 1110, 1117–18 (9th Cir. 2005) (finding the use of deadly force against a mentally disturbed individual armed with a sword objectively reasonable)).

Regarding Hooper, King, and Tripp, the officers who "opened fire on [Strickland]," the Court once again finds that their use of deadly force was constitutionally reasonable based on the allegations made in Plaintiffs' FAC. As for Grube and Ball, "[a]llegations of a failure to intercede . . . to stop Hooper's conduct therefore also fail given the lack of

---

[8] County Defendants seek to dismiss Claims One, Two, and Four for the same reasons set forth in City Defendants' Motion to Dismiss Claims One, Three, and Five. County Defs.' Joinder, ECF No. 62, at 2.

any predicate constitutional injury." See ECF No. 58, at 12–13.  Accordingly, Claim One is DISMISSED.  By the same reasoning, Claims Two and Three against Moon and Gammelgard, who were not present at the scene of the incident and are thus named in supervisory capacities, are DISMISSED.  Finally, "[b]ecause Plaintiffs have not demonstrated a constitutional violation based on Defendants' use of deadly force, a Monell claim is foreclosed." Id. at 12.  Therefore, Claims Four and Five against the City of Grass Valley and Nevada County are also DISMISSED.

Despite having been granted the opportunity to amend, the allegations in the FAC are materially the same or identical to those presented in the original Complaint.  It thus appears that further amendment would be futile.  Accordingly, Claims One through Five are DISMISSED without leave to amend.[9]

### B. Claims Nine through Thirteen: Interference with Familial Association in Violation of Fourteenth Amendment and Monell Liability[10]

Claims Nine through Thirteen assert claims that the LEOs' unreasonable and excessive use of force caused loss of familial association in violation of the Fourteenth Amendment.  Because the alleged use of deadly force was constitutionally reasonable, these claims fail for the same reasons set forth above.  Accordingly, Claims Nine through Thirteen are DISMISSED without leave to amend.

### C. Claims Seventeen and Eighteen: Rehabilitation Act and Americans with Disabilities Act[11]

The Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"), and the Rehabilitation Act, 29 U.S.C. §§ 701, et seq., provide identical remedies, procedures, and rights, and are analyzed under the same legal framework.  See Vos v. City of

---

[9] The Court need not address Defendants' alternate argument that they were entitled to qualified immunity.

[10] County Defendants seek to dismiss Claims Nine, Ten, and Twelve for the same reasons set forth in City Defendants' Motion to Dismiss Claims Nine, Eleven, and Thirteen.  County Defs.' Joinder, ECF No. 62, at 2–3.

[11] County Defendants join in City Defendants' Motion to Dismiss these two claims.  County Defs.' Joinder, ECF No. 62, at 3.

Newport Beach, 892 F.3d 1024, 1036 (9th Cir. 2018). "Title VII of the ADA prohibits a public entity from discriminating against any qualified individual with a disability. Title VII applies to arrests." Id. (internal citations and quotation marks omitted). The same fact evaluation applies to an accommodation analysis as to a Fourth Amendment reasonableness determination. Id. at 1037.

Given that the allegations in the FAC are materially the same or identical to those in the original Complaint, the Court again finds that, from the reasonable perspective of the officers, "Strickland was armed with a rifle not only capable of instantly killing them, but of firing projectiles with the ability to cause extensive harm at substantial distances." ECF No. 58, at 15. As a result, the "officers acted reasonably in employing deadly force." Id. (further finding "that because Strickland represented himself as a 'direct threat,' Defendants were not required to provide accommodation.") (citing 28 C.F.R. § 35.139). Accordingly, Claims Seventeen and Eighteen are DISMISSED without leave to amend.

### D. Claims Twenty through Twenty-Four:  State Law Claims[12]

Claims Twenty, Twenty-One, and Twenty-Two allege unreasonable and excessive force under the California Constitution, Article I, § 13, violation of the Bane Act, California Civil Code § 52.1, and assault and battery, respectively. Because the Court already determined that the use of deadly force was objectively reasonable based on the allegations in the FAC, there can be no basis for these claims and they are therefore DISMISSED without leave to amend.

Claim Twenty-Three asserts a negligence claim. "To establish negligence, a party must prove the following:  (a) a legal duty to use due care; (b) a breach of such legal duty; (c) the breach as the proximate or legal cause of the resulting injury." Hernandez v. City of San Jose, 14 Cal. App. 4th 129, 133 (1993) (citation and internal quotation marks omitted) (emphases in original). The California Supreme Court has long

---

[12] County Defendants join in City Defendants' Motion to Dismiss the state law claims.  County Defs.' Joinder, ECF No. 62, at 3.

recognized "that the reasonableness of a peace officer's conduct must be determined in light of the totality of the circumstances." Hayes v. Cnty. of San Diego, 736 F.3d 1223, 1236 (9th Cir. 2013) (citation omitted). "[T]he officer's duty to act reasonably when using deadly force extends to preshooting conduct." Id. California negligence law is broader than Fourth Amendment law in analyzing reasonableness. C.V. ex rel. Villegas v. City of Anaheim, 823 F.3d 1252, 1257 n.6 (9th Cir. 2016); see Vos, 892 F.3d at 1037–38. Additionally, Claim Twenty-Four asserts a wrongful death negligence claim under California Code of Civil Procedure § 377.60, "which is simply the statutorily created right of an heir to recover for damages resulting from a tortious act which results in decedent's death." Gilmore v. Superior Ct., 230 Cal. App. 3d 416, 420 (1991) (citations omitted). The analysis for both claims is the same.

To the extent Plaintiffs allege that Defendants breached their duty of care by using unreasonable and excessive force against Strickland, that argument fails for the aforementioned reasons. Regarding Defendants' pre-shooting conduct, the Court previously expressed its hesitancy "to second-guess the decisions of the officers in the instant manner." ECF No. 58, at 19 (citing Ryburn v. Huff, 565 U.S. 469, 477 (2012)). Plaintiffs again allege that "[t]here was no urgency to the situation because [Strickland] did not try to flee, did not brandish the toy gun, did not threaten anyone, and was not in the process of committing a crime." FAC ¶ 93. As a result, Plaintiffs claim that the LEOs had ample time to, among other things, "request assistance from other deputies or officers with some Crisis Intervention Incident training, and contain [Strickland] at that location while a professional negotiator, crisis de-escalator, and/or mental health provider came to the scene to engage with [Strickland]." Id. However, "[i]n the objectively reasonable view of the present officers, [Strickland] was in public, armed with a long gun, and not responding to commands." ECF No. 58, at 19. Plaintiffs have provided nothing more than speculation "that a mental health specialist would have been able to (1) promptly dispatch to the scene; (2) be present on scene based on safety considerations; and (3) peacefully diffuse a situation that numerous officers could not

despite repeated pleadings." Id.  Accordingly, Claims Twenty-Three and Twenty-Four are DISMISSED without leave to amend.

**CONCLUSION**

For reasons set forth above, City Defendants' Motion to Dismiss, ECF No. 60, and County Defendants' Joinder in that Motion, ECF No. 62, are GRANTED without leave to amend.  Claims One, Two, Three, Four, Five, Nine, Ten, Eleven, Twelve, Thirteen, Seventeen, Eighteen, Twenty, Twenty-One, Twenty-Two, Twenty-Three, and Twenty-Four are DISMISSED in their entirety.  The following Defendants are hereby DISMISSED from this action:  Moon, King, Tripp, City of Grass Valley, Gammelgard, Hooper, Grube, and Ball.  This action shall proceed on Claims Six, Seven, Eight, Fourteen, Fifteen, Sixteen, Nineteen, and Twenty-Five against Defendants Nevada County, McCormack, Wellpath, Brent Weldemere, and Richard Donofrio.

IT IS SO ORDERED.

Dated:  April 1, 2022

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE