UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF GABRIEL STRICKLAND, N.S., and SHAWNA ALEXANDER,<br><br>Plaintiffs,<br><br>v.<br><br>NEVADA COUNTY, CALIFORNIA, et al.,<br><br>Defendants. | No. 2:21-cv-0175 MCE AC<br><br><br>ORDER |

This matter is before the court on plaintiff's motion to compel discovery from defendant Wellpath Management, Inc. ECF No. 91. This discovery motion was referred to the magistrate judge pursuant to E.D. Cal. R. 302(c)(1). The motion was taken under submission. ECF No. 92. For the reasons explained below, the court GRANTS the motion in part and DENIES it in part.

**I.   Relevant Background**

The operative First Amended Complaint was filed on October 18, 2021. ECF No. 59. In ruling on a Motion to Dismiss, District Judge Morrison C. England summarized the facts presented in the FAC as follows:

A. Officer Involved Shooting

On January 1, 2020, at approximately 12:46 p.m., Nevada County Region Dispatch ("Dispatch") received reports that a man was walking on Squirrel Creek Road with "what appeared to be a

1

shotgun," but he did not appear to be upset. The man was 25-year-old Gabriel Strickland ("Strickland"), and he was carrying a black toy airsoft rifle with an orange tip on the barrel. Responding to the call, two deputies from the Nevada County Sheriff's Office ("NCSO") (King and Tripp) met with officers (Hooper, Grube, and Ball) from the Grass Valley Police Department ("GVPD") near the intersection of Squirrel Creek Road and Rough & Ready Highway. Plaintiffs allege that these law enforcement officers ("LEOs") knew that Strickland was a homeless man with mental health issues and that he had been released from custody of the local county jail (Wayne Brown Correctional Facility, "WBCF") a day or two before. According to the FAC, the LEOs consequently knew that it was likely Strickland was suffering from a mental health episode and would also likely not respond to their commands or directions in a normal or expected manner.

The LEOs allegedly formulated a plan to confront Strickland without the assistance of mental health professionals or non-violent de-escalation techniques. Instead, Plaintiffs aver, the objective was simply to use overwhelming force. This plan was communicated to Dispatch with sufficient time for Sheriff Moon to have considered its implications prior to the plan's ultimate implementation.

Strickland continued to walk unaccompanied eastbound on Squirrel Creek Road past Oak Super Market, and then southbound on Walker Drive for 10 to 15 minutes with the toy gun slung over his shoulder. Plaintiffs allege that Strickland never brandished the toy gun, threatened anyone, trespassed onto private property, or acted in any manner that was a threat to public safety. The aforementioned LEOs confronted Strickland near Walker Drive and Oak Street in the unincorporated area of Nevada County, just on the border with the City of Grass Valley, surrounding him with patrol vehicles, exiting those vehicles, and drawing their firearms at him from a close range.

The LEOs commenced to yell commands at Strickland to drop the firearm. Strickland responded by holding the toy gun away from his body and telling the officers it was a "B.B. gun." Strickland purportedly slapped the gun with his hand, demonstrating the sound of plastic instead of metal. One of the LEOs on scene radioed Dispatch: "He's saying it's a B.B. gun." As the LEOs continued to yell commands to drop the weapon, Strickland pointed to the orange tip on the barrel of the gun to demonstrate that it was a toy gun, not a real firearm. Tripp responded that Strickland may have painted that himself, and that the LEOs did not want to kill him. Plaintiffs allege that Strickland kept the toy gun barrel pointed at the ground as he spoke to the LEOs.

Plaintiffs allege that Tripp initiated an assault and told the other LEOs to cover him. Tripp, Hooper, and Ball approached Strickland, with Tripp and Ball armed with assault weapons and Hooper with a Taser device. Anticipating that the LEOs' escalation and confrontation would necessitate the use of deadly force, Tripp told Dispatch, "Tell Grass Valley units to get out of cross-fire!" As they advanced, Strickland dropped to his knees, but Plaintiffs concede that Strickland continued to hold the toy gun, sometimes pointing it in the

      direction of the LEOs and at other times pointing it up towards the sky. Hooper attempted to employ his Taser, but it failed to effectively connect with Strickland's clothing, rendering it ineffective. King, Tripp, and Hooper then fired their weapons at Strickland, striking him several times. He was later taken to a local hospital, where he was pronounced dead.

      B. <u>Previous Medical Treatment</u>

      Plaintiffs further allege that the NCSO and Wellpath were fully aware of Strickland's existing mental health issues, as they had provided medical and mental health care to him on several prior occasions when Strickland was in custody at WBCF. In early 2016, a doctor at Wellpath diagnosed Strickland with bipolar disorder, post-traumatic stress disorder, and anxiety disorder. Subsequently, Strickland was in the custody of WBCF on at least two other prior occasions, yet NCSO and Wellpath did not provide Strickland with further mental health examinations or mental health care.

      On December 26, 2019 (only days before the incident giving rise to the instant matter), Strickland was arrested and taken to WBCF, where he was booked and incarcerated. NCSO and Wellpath performed a physical and mental intake wellness check and noted that Strickland urgently needed a mental health evaluation. While in custody from approximately December 26 to 30, 2019, NCSO and Wellpath continued to monitor Strickland. Plaintiffs allege that these Defendants observed unusual conduct and verbal expressions indicating serious active mental health issues, yet they took no further action, such as referring him to Nevada County's Behavioral Health Department or a third-party mental health provider or placing him on an involuntary hold under California's Welfare and Institutions Code §§ 500 et seq. (notably § 5150). Strickland was released from custody on or about December 30, 2019.

ECF No. 68 at 2-5.

      As to defendant Wellpath, the only defendant relevant to the discovery motion at bar, the FAC asserts claims of entity liability under 42 U.S.C. § 1983 for a custom, policy, or practice of deliberate indifference and callous disregard of inmate medical needs. ECF No. 59 at 43-44, 57-60. Specifically, the FAC alleges "Wellpath denied Gabriel Strickland timely and effective mental health evaluation and care during his incarceration from December 26th to on or about December 30, 2019, and that as the direct consequence of this failure, an accurate assessment of Gabriel Strickland's mental health was not provided to the Nevada County Probation Department, the Nevada County District Attorney's Office, or the Nevada County Superior Court to determine whether Gabriel Strickland should be released from custody" and that this error resulted in the altercation that lead to Strickland's death. <u>Id.</u> at 44-45. Plaintiffs also assert an Americans with

1  Disabilities Act claim against Wellpath based on the same alleged failure to provide adequate
2  medical care while Strickland was in custody. Id. at 63-65. All claims against Wellpath are
3  based on its alleged provision of medical care to Strickland while he was in custody.

4        Defendant Wellpath was not a party to the motion to dismiss heard by Judge England and
5  quoted above. ECF No. 68. Instead, Wellpath answered the FAC on November 23, 2021. ECF
6  No. 64. In its Answer, Wellpath wrote: "defendants deny on information and belief that Wellpath
7  Management Inc., is the owner of California Forensic Medical Group, Inc. [CFMG], and deny
8  that Wellpath Management Inc., is the contracted medical care provider for the Nevada County
9  jail. Defendants deny all allegations that defendant Wellpath Management, Inc., provided any
10  care or treatment or directed any medical care or treatment for decedent." ECF No. 64 at 2-3.

11        On May 3, 2024, plaintiffs served Interrogatories and Requests for Production to
12  Wellpath, Set One. There were eighteen (18) interrogatories, all of which were directed to the
13  allegations of the FAC regarding Wellpath's provision of medical care to Strickland. ECF No.
14  91-2 at 5-15 (Exhibit 1 to Declaration of Patrick H. Dwyer). The Requests for Production sought
15  documentary support for Wellpath's responses to the Interrogatories. ECF No. 91-2 at 18-26
16  (Exhibit 2 to Declaration of Patrick H. Dwyer). On June 1, 2024, Wellpath served answers to the
17  Set One Interrogatories and Document Requests. ECF No. 91-2 at 29-36, 44-48 (Exhibits 3 and 4
18  to Declaration of Patrick H. Dwyer). Wellpath objected to responding to all the interrogatories
19  and document requests as follows:

20
21
22
23
> Objection. Defendant WELLPATH is not the contracted medical provider for inmate patient care at the Nevada County Jail. In addition, Defendant is not the employer of the medical staff of the contracted medical provider at the Nevada County Jail. Defendant has no Wellpath documents responsive to this request. The request should be directed to the proper medical provider.

24  ECF No. 91-2 at 33.

25        Plaintiffs sent a meet and confer letter to defense counsel, explaining the basis for the
26  allegations in the FAC regarding Wellpath being the alter-ego of CFMG and contending that
27  there is no corporate separateness sufficient to support a separate corporate identity for CFMG.
28  ECF No. 91-2 at 51. Plaintiffs did not receive a response. It has been Wellpath's position that it

is the incorrect defendant because CFMG was the medical provider to Strickland, and CFMG and Wellpath are separate entities.

On June 14, 2024, plaintiffs served Wellpath with a second set of interrogatories and document requests, seeking discovery specific to Wellpath's claim that it is not the medical provider at the Nevada County Jail. ECF Nos. 91-2 at 54-61, 64-70 (Exhibits 6 and 7 to Declaration of Patrick H. Dwyer). Wellpath provided responses, but refused to substantively answer the Set Two interrogatories and document requests, again asserting in conclusory terms that Wellpath was not the contracted medical provider. ECF Nos. 91-2 at 73-76, 79-80 (Exhibits 8 and 8 to Declaration of Patrick H. Dwyer). Defendant Wellpath asserts in the joint statement that it need not answer the discovery because Wellpath and CFMG are separate entities, plaintiff is aware of this, and the motion to compel should be denied and plaintiffs should amend the case to make CFMG the defendant. ECF No. 91 at 7.

## II. Motion to Compel

Plaintiffs move to compel further responses from Wellpath to Sets One and Two of plaintiff's interrogatories and corresponding requests for production. ECF No. 91-1 at 1.

### A. Applicable Legal Standards

The scope of discovery in federal cases is governed by Federal Rule of Civil Procedure 26(b)(1). The current Rule states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. Relevancy to the subject matter of the litigation "has

been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Relevance, however, does not establish discoverability; the proposed discovery must also be proportional to the needs of the case.

B. Wellpath Must Respond to Interrogatories and Requests for Production Set Two

Wellpath is currently the named defendant in this case. Wellpath argues that the issue of corporate separateness is not relevant because it is unrelated to any of the claim in plaintiffs' case. ECF No. 91-1 at 5. Relevance, however, is not judged only with relation to claims, but also with relation to defenses. Wellpath has clearly and consistently asserted a defense that it is not liable because it is not the owner of or same entity as CFMG and is therefore not the entity that provided medical care to Strickland. ECF No. 64 at 3. The interrogatories at Set Two regarding corporate structure are clearly relevant to this defense. Wellpath has not made a motion to dismiss on the basis that it is incorrectly named as the defendant, and its assertion in the joint statement that plaintiffs should simply voluntarily remove it as a defendant is insufficient at best. As a presently named an actively defending party to this case, Wellpath must participate in discovery. Wellpath is asserting a defense that it is not the same entity as CFMG, and therefore discovery related to Wellpath's relationship with CFMG is plainly relevant. The motion to compel is GRANTED and Wellpath is ordered to properly respond to Set Two of plaintiffs' Interrogatories and Requests for Production.

With respect to Set One discovery, the motion to compel is denied without prejudice. Wellpath's responses to Set Two may allow the parties to resolve the issue of Wellpath's propriety as a defendant, and therefore its need to respond to Set One, without court intervention. If the parties are unable to reach a resolution on the matter, plaintiffs may bring a second motion to compel further responses to Set One. As always, cooperation between the parties is strongly encouraged and substantial or inappropriate lack of cooperation may result in sanctions.

C. Payment of Fees

Because plaintiffs' motion to compel is substantially meritorious, an award of fees and costs is appropriate pursuant to Federal Rule of Civil Procedure 37(a)(5)(A) and E.D. Cal. R. 230.

1  The appropriate method for computing fees in this case is the lodestar approach, in which the
2  court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly
3  rate. Cunningham v. County of Los Angeles, 879 F.2d 481, 484 (9th Cir. 1988). "The measure
4  to be used 'is not actual expenses and fees but those the court determines to be reasonable.'"
5  Matter of Yagman, 796 F.2d 1165, 1184–85 (9th Cir.1986). The Ninth Circuit affords district
6  courts broad discretion in determining the reasonableness of fees. Gates v. Deukmejian, 987 F.2d
7  1392, 1398 (9th Cir. 1992). While the amount of a fee award is discretionary, the district court
8  must "provide a concise but clear explanation of its reasons for the fee award." Carter v. Caleb
9  Brett LLC, 757 F.3d 866, 868 (9th Cir. 2014).

10  Here, plaintiffs' counsel stated they spent 10.5 hours preparing the joint statement and
11  submitting the matter to the court. ECF No. 91-1 at 5. Defendant did not respond to the issue of
12  fees. Id. Plaintiffs' counsel did not submit an invoice or itemized billing statement, nor did they
13  identify their usual billing rate. In the interest of judicial economy, the court will award
14  plaintiffs' fees of $2,572.50 in connection with this motion, representing an hourly rate of $350
15  for 7.35 hours of attorney time. The rate of $350 was selected by reference to other recent cases
16  examining the prevailing market rates in Sacramento. See, e.g., Litwin v. Westchester Surplus
17  Lines Ins. Co., 2:23-cv-01885-DJC-CSK, 2024 U.S. Dist. LEXIS 111778, *5, 2024 WL 3164543
18  (E.D. Cal. June 25, 2024)(approving $300 requested rate), Mostajo v. Nationwide Mut. Ins. Co.,
19  2023 U.S. Dist. LEXIS 64196, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (approving
20  requested rate of $375); Ever.Ag, LLC v. Milk Moovement, Inc., 2:21-cv-02233-WBS-AC, 2023
21  U.S. Dist. LEXIS 160418, *4, 2023 WL 5918119 (E.D. Cal. Sept. 11, 2023)(approving $350
22  rate).

23  The court reduced the requested hours from 10.5 hours to 7.35 hours because plaintiffs'
24  counsel effectively submitted an improper block bill. Block billing is the practice of listing
25  several unrelated tasks under one time entry, without specifying the time spent on each task.
26  Banas v. Volcano Corp., 47 F. Supp. 3d 957, 966 n.9 (N.D. Cal. 2014). "[B]lock billing makes it
27  more difficult to determine how much time was spent on particular activities." Welch v. Metro.
28  Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007). "[B]lock billing itself is symptomatic of

excessive billing." United Fabrics Int'l, Inc. v. C&J Wear, Inc., 08-cv-1085-JVS-AJWx, 2009 WL 10655841, at *2 (C.D. Cal. Sept. 29, 2009).  The Ninth Circuit has "upheld as a 'reasoned exercise of discretion' a district court's decision to reduce block-billed hours by 30%." United States v. W. Radio Servs. Co., 671 Fed. App'x 460, 461 (9th Cir. 2016) (citing Lahiri v. Universal Music & Video Distrib. Corp., 606 F.3d 1216, 1222-23 (9th Cir. 2010)).  Because plaintiffs provide no basis for their assertion that they billed 10.5 hours, the court determines it is appropriate to reduce the award by 30%.  Further, the undersigned believes that a 30% reduction, which leaves 7.35 billable hours, is appropriate given the length and complexity of the briefing, as well as the overall circumstances of the meet and confer process.  The total award due to plaintiffs is $2,572.50 (7.35 x $350).

### III.     Conclusion

Plaintiffs' motion to compel (ECF No. 91) is GRANTED in part and DENIED in part, and defendant Wellpath is ORDERED to fully respond to plaintiffs' interrogatories and requests for production, Set Two, within 14 days of this order.  Further, Wellpath shall pay plaintiffs $2,572.50 in attorney's fees within 14 days of this order.

IT IS SO ORDERED.

DATED: September 26, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE